UNITED STATES v. MOUNDAY et al.

(District Court, D. Kansas, First Division. October 11, 1913.)

No. 1,456.

1. SEARCHES AND SEIZURES (§ 7*)—UNREASONABLENESS.

Where a marshal, on going to arrest defendants for misuse of the mails in furtherance of a scheme to defraud, was accompanied by certain inspectors, who, without a warrant, remained after the arrest and took possession of defendants' books, papers, and documents found in their office and carried them away, the inspectors were guilty of an unreasonable search and seizure, in violation of Const. art. 4, providing that the people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

[Ed. Note.—For other cases, see Searches and Seizures, Cent. Dig. § 5; Dec. Dig. § 7.*]

2. SEARCHES AND SEIZURES (§ 7*) — UNREASONABLENESS — PROPERTY SEIZED — SURRENDER TO OWNER.

Certain inspectors, having accompanied a marshal to serve a warrant on defendants, arresting them for misuse of the mails in furtherance of a scheme to defraud, remained and searched their office and seized their books, papers, letters, and documents, removing the same to their office, whence they were ordered delivered to the clerk of the court and sealed. *Held* that, such material having been secured as the result of an unconstitutional search and seizure, defendants were entitled to have the same returned to them, though such documents might contain incriminatory evidence which the district attorney desired to submit to the grand jury and use against them.

[Ed. Note.—For other cases, see Searches and Seizures, Cent. Dig. § 5; Dec. Dig. § 7.*]

Don A. MounDay and another, having been charged with using the mails in carrying into execution a scheme to defraud, were arrested, and after the arrest, post office inspectors having searched their office and obtained books and papers which were turned over to the court, defendants applied for an order requiring the surrender of such books and papers to them as having been unlawfully seized. Motion granted.

Fred Robertson, U. S. Atty., of Topeka, Kan.

Bone & Briggs, D. R. Hite, and A. B. Quinton, all of Topeka, Kan., for petitioner.

POLLOCK, District Judge. The facts as pleaded are: On application of the district attorney a commissioner's warrant was issued commanding the marshal of the court to arrest defendants on the charge of using the mails of the country in carrying into execution a scheme by them devised to defraud, in violation of section 215 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1130 [U. S. Comp. St. Supp. 1911, p. 1653]). This warrant was executed by the marshal by taking defendants into custody. The arrest of defendants was made by the marshal in the office or place of business of the defendants in the city of Topeka. At the time the arrest was made two post office inspectors in the service and employés of the government, accompanied the deputy marshal, who actually made the arrest, to the

office or place of business of defendants. After the making of the arrest the inspectors made search of the office of defendants for the purpose of securing, if possible, books, papers, letters, and other writings which would tend to prove defendants' guilt of the offense for which they had been arrested. This search resulted in the taking and carrying away by the inspectors from said office of defendants a large volume of letters, writings, and documents, the private property of defendants, or private property of others in possession of defendants. Thereafter defendants were bound over to await the action of the grand jury. Meanwhile, pending such action, defendant D. A. Moun-Day presented to this court his application for a rule on the district attorney to appear and show cause, if any he had, why he should not be ordered to restore such private property of defendants so taken by the inspectors to their possession. A show cause order was issued on this application. The district attorney appeared thereto and filed his response. The issues so framed, coming on for hearing, in the interests of time, it was by the court suggested the papers, writings, and documents so secured should be sealed in the presence of counsel for the respective parties and deposited with the clerk of this court for safe-keeping; any one thereafter desiring to use or obtain possession of such papers and documents should apply to the court for an order on the clerk for the same. This suggestion was adopted by counsel for the respective parties, and a consent order to this effect was entered. The papers were sealed and deposited in pursuance of this order with the clerk. Thereafter defendants, deeming themselves entitled to the return of said papers as a matter of right, applied to the court for an order on the clerk to this effect. In response to this application the district attorney appeared and filed his response, first, denying generally the matters and things charged and stated in the verified application of defendant D. A. MounDay; second, making cross-application, praying the court to inquire into the matter in advance and determine if there should be found among such papers matters material to present to the grand jury to secure an indictment against defendants, or material in the prosecution of defendants if they shall be indicted, and if such matter be found, to further inquire and determine whether such matters, letters, writings, etc., so secured from the possession of the defendants, should be received in evidence on account of the manner in which they were seized by officials of the government. To this cross-application defendant D. A. MounDay has interposed a motion to strike out, based on the ground that, conceding the papers and documents to contain matters material in the presentment and prosecution of defendants, yet the same should be returned to the defendants, and not by the court be permitted to be used by the government in evidence against the defendants.

In view of the fact that the grand jury to which defendants are to be presented meets within the course of a few days from this date, on the suggestion and at the request of the district attorney representing the government, and the defendant, I shall proceed to determine the question presented at this time, assuming for the purposes of decision of the matters presented the manner in which the letters, papers, docu-

ments, and writings were obtained is truly stated as detailed in the verified application of defendant D. A. MounDay in this case, and that such papers, letters, etc., are the private property of defendants.

The question thus presented is, Can the plaintiff in a criminal prosecution such as this be permitted to use evidence so obtained for the purpose of securing the indictment and conviction of defendants, where such evidence is in the custody of the court, as in this case, and the question is presented and inquired of, as here, in advance of investigation by the grand jury, or indictment returned? The answer to this question must be found in the effect which shall and must be given the fourth and fifth amendments to the Constitution as applied to the particular facts of this case. The fourth article of amendment to the Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The fifth article provides:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

That the action of the officials of the government in searching the premises of defendants and seizing their private papers without warrant to so do, as charged in the verified application filed herein, was sanctioned by no law, and constituted an unwarranted invasion of defendants' private rights guaranteed to them by the above-quoted provisions of our national Constitution there can be, and is, no doubt whatever. However, the question here presented is, may the fruits of such unwarranted invasion of defendants' constitutional rights, now in the custody and under the control of this court, in so far as material, be employed by the government to secure an indictment against, or a conviction of defendants? That is to say: Where it is conceded evidential matters material to the inquiry made have been seized, as in this case, may or should the court, on being inquired of, permit such use of such matters as is desired by the representative of the government, as is shown by his application in this case?

[1] As has been seen from the statement made, it is alleged the search of defendants' premises and the seizure of their private property and personal effects made was done by no one authorized by law to arrest defendants, or to execute a search and seizure warrant had one been regularly applied for and granted. In other words, to support the search and seizure made, there was no lawful authority or right of any kind or nature. Hence the entire proceedings, in so far as the search and seizure in this case is concerned, is sanctioned by no law, but was such an unauthorized, unlawful, and void proceed-

ings on the part of those engaged therein as beyond all question constitutes an *unreasonable search and seizure* within the prohibition and condemnation of article 4 of the Constitution above quoted.

[2] How, therefore, can the rights of defendants "to be secure in their persons, houses, papers and effects" be asserted by and granted to them, as the Constitution guarantees, in this court? Can it be done by placing in the hands of the government officials charged by law with the prosecution of defendants as offenders against its laws the fruits of this unlawful invasion of constitutional rights of defendants by the agents of the government, and this in the very teeth of that provision of article 5 above quoted, which declares "no person * * * shall be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without due process of law"? As yet, defendants stand charged with the commission of no criminal offense in this court. Even if so charged, this court must and will presume their innocence until the contrary is proven beyond reasonable doubt. In order to secure such proof and assist the government in overcoming the presumption of innocence which attends upon defendants and all other citizens until lawful conviction had, shall this court wink at the unlawful manner in which the government secured the proofs now desired to be used, and condone the wrong done defendants by the ruthless invasion of their constitutional rights, and become a party to the wrongful act by permitting the use of the fruits of such act? Such is not my conception of the sanctity of rights expressly guaranteed by the Constitution to a citizen.

The question here presented has, in principle, been ruled in other jurisdictions, and by the Supreme Court. In some cases it has been ruled, on the ground of expediency—that is to say, on the ground those guilty of the commission of crime should not go unwhipped of punishment—that evidential matters in the custody of the court, or in the possession of prosecuting officers, tending to show the guilt of defendant may be offered in evidence against them almost regardless of the means employed for its procurement. See United States v. McHie (D. C.) 196 Fed. 586; also, the reasoning employed by the court in United States v. Wilson (C. C.) 163 Fed. 338. However, it was thought by the framers of our Constitution, and the amendments thereto above quoted, the individual citizen is entitled to and should have protection afforded him and his rights against unlawful invasion by legally constituted authority, or those assuming to act under the guise of such authority. While I neither doubt nor deny the duty of all good men, and courts as well, to uphold the lawful enforcement of the criminal laws of our country, to the end that justice may be done and the guilty not go unpunished, yet, it is my belief the constitutional safeguards, deliberately framed for the purpose of protecting the rights of the individual citizen, are of equal, if not more, concern than the conviction of any one accused of the commission of a criminal act, no matter how guilty in fact he may be. No one, under our Constitution and laws may be adjudged guilty until the presumption of his innocence is overcome by evidence lawfully offered and

lawfully received against him in open trial in a court of justice, as provided by and in accordance with the Constitution and laws of our country. Such is the holding of the Supreme Court, Mr. Justice Bradley writing the opinion, in the leading case of Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, which holding has never been departed from by that court in so far as I am advised. True, it has been held by the Supreme Court, in the face of powerful dissent, the constitutional guaranty above quoted may be lawfully dispensed with by an act which provides immunity from punishment for the commission of the offense which the evidence procured from a defendant tends to establish. Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652, and other cases. But such is not this case. Here there is no immunity which is either offered or which can be afforded defendants by way of protection against the use of the evidential matters in controversy. In this case it is the object of the government to cause defendants to be punished, if convicted, and to use such evidence now in the custody of the court to aid in securing such conviction. Surely such a flagrant violation of defendants' conceded constitutional rights should not in justice be permitted to be used to their prejudice. One wrong plus another does not make a right.

It follows the motion of defendant to strike out the cross-application of the district attorney, if it shall be either proven or conceded the papers now in the custody of the clerk were secured by representatives of the government in the manner charged in the application of defendant MounDay, must be sustained, and the use of said papers against the protest of defendants be denied to the government, either for use before the grand jury or at the trial if defendants shall be indicted, on the ground of their illegal and unlawful manner of procurement.

It is so ordered.