**STATE of Iowa, Appellee,**

v.

**Heather M. CLINE, Appellant.**

No. 99–0412.

Supreme Court of Iowa.

Sept. 7, 2000.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, John P. Sarcone, County Attorney, and Stephanie L. Cox, Assistant County Attorney, for appellee.

TERNUS, Justice.

The defendant, Heather Cline, was convicted of possession of a controlled substance in violation of Iowa Code section 124.401(5) (1997). She appeals, contending the district court erred in overruling her motion to suppress evidence obtained in a search of her person. We conclude that the challenged search violated the defendant's constitutional rights under the search-and-seizure clause of the Iowa Constitution. We also hold that the good faith exception to the exclusionary rule does not apply under Iowa law. Accordingly, we reverse and remand.

## I. *Background Facts and Proceedings.*

Cline's conviction arises from the stop of her vehicle by Des Moines police officers who were investigating reports of suspected drug activity in the vicinity. After Cline's vehicle was stopped, a police officer searched her person and recovered a small bindle of methamphetamine from her jeans pocket. Cline was arrested and charged with possession of a controlled substance. *See* Iowa Code § 124.401(5).

Prior to trial, Cline filed a motion to suppress the evidence found in the search of her pocket, alleging the search violated the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. The court held a hearing on Cline's motion and the two officers involved in the incident testified.

The officers testified to the following facts. On October 25, 1998, two different neighbors in the vicinity of 1511 13th Street, in Des Moines, called the Des Moines police department to complain about ongoing drug activity at that address. The house located on the property was uninhabitable, having previously been damaged in a fire. In addition, two weeks prior to Cline's arrest, the police had discovered a meth lab inside the burned out building.

Two police officers responded to the neighbors' complaints about 8:00 p.m. (The record does not reveal how much time had elapsed since the police had received the neighbors' calls.) As the officers approached the property on foot, they heard a vehicle start. Officer Holly Glenn assumed someone was trying to leave the scene, so she ran around the house to the alleyway adjoining the premises in the back. (The other officer was delayed in reaching the back of the house by a large, barking dog.) Glenn saw Cline's van backing out from the rear of the property without its lights on. Glenn ran after the van and successfully stopped it in the alleyway. She then ordered Cline out of the vehicle, handcuffed Cline, "patted [her] down and searched her." During the search, Glenn found a bindle of methamphetamine in the pocket of the jeans Cline was wearing.

Glenn testified at the suppression hearing that she stopped Cline's van "[t]o investigate what was going on at the house" and because Cline did not have the van's headlights turned on. With respect to the search, Glenn testified that "[i]t was basically a search incident to citation." She later supplemented this reasoning, however, stating that "we knew we had traffic charges on the vehicle, and she just left a drug house. I wasn't sure what she had on her, what was going on, so I did a search and a pat-down." Glenn testified on cross-examination that she was suspicious and wanted to know what Cline had on her.

In the trial court, Cline argued that the officer's justification for the search—the traffic violation—was constitutionally insufficient because the United States Supreme Court has held that a search incident to citation is not permitted under the Fourth Amendment. *See Knowles v. Iowa*, 525 U.S. 113, 114, 119 S.Ct. 484, 486, 142 L.Ed.2d 492, 496 (1998). The defense asserted, therefore, that evidence seized in the search should be excluded at trial. Cline further contended that the good faith exception to the exclusionary rule did not apply. *See Illinois v. Krull*, 480 U.S. 340, 359–60, 107 S.Ct. 1160, 1172, 94 L.Ed.2d 364, 381 (1987) (holding that if police officer relied in objectively good faith upon a state statute authorizing search, items seized in the search should not be excluded at trial); *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677, 698 (1984) (holding that if a police officer relied in objectively good faith upon a search warrant in making a search, the fruits of the officer's search should not be suppressed).

In response, the State acknowledged that one reason the officer searched Cline was based upon the fact that the police intended to issue a citation to Cline. The

State pointed out, however, that the United States Supreme Court's decision in *Knowles*, holding such searches illegal, was issued after the search of Cline. The State also asserted that the search was justified as necessary for the officer's safety, citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Finally, the State argued that the circumstances attending the defendant's apprehension—ongoing drug activity on the premises together with the defendant's attempt to flee—justified the search.

The district court overruled Cline's motion to suppress, concluding that the surrounding circumstances made the officer's stop and search valid. In a later ruling on the defendant's motion to reconsider, the district court specifically ruled that the search was legal under *Terry*.

Cline was subsequently found guilty in a bench trial on stipulated minutes of testimony. After sentencing, she filed this appeal, challenging only the district court's ruling on her suppression motion.

## II.  *Scope of Review.*

■ We review constitutional claims de novo. *See State v. Seager*, 571 N.W.2d 204, 207 (Iowa 1997). "In doing so, we independently evaluate the totality of the circumstances shown in the record." *Id.* "Fact-findings underlying the district court's ruling on the motion to suppress are binding on us if supported by substantial evidence." *State v. Cadotte*, 542 N.W.2d 834, 836 (Iowa 1996).

## III.  *Issues on Appeal.*

A.  *Issues raised by the defendant.* On appeal, the defendant continues to argue the challenged evidence must be suppressed because the officer justified the search as one incident to citation and, under *Knowles*, this reason is not constitutionally valid. Cline also contends that the district court's ruling on her motion to reconsider was in error because the search cannot be upheld as a valid *Terry* pat down. The State makes no response to these contentions in its brief, apparently waiving any argument that the search could be justified under *Terry* or as one incident to citation.[1] *See* Iowa R.App. P. 14(a)(3) ("Failure in the brief to state, to argue or to cite authority in support of an issue may be deemed waiver of that issue.").

B.  *Issues raised by the State.* Turning now to the issues addressed by the State in its brief, we identify two: (1) the officer had probable cause to believe that evidence of a crime would be found on Cline coupled with exigent circumstances; and (2) to the extent the officer relied on the traffic stop to justify the search, the officer's search was made in objective good faith, thereby avoiding application of the exclusionary rule.

■ The defendant appears to dismiss the State's probable cause argument on the ground that the officer did not justify the search on the basis of probable cause. The defendant's focus on the officer's stated reasons for conducting the search is misplaced. The constitutional reasonableness of a search or seizure is

---

1. The defendant's positions with respect to the search-incident-to-citation argument and the inapplicability of *Terry* appear to have merit. As we have already noted, the United States Supreme Court held in the *Knowles* case that a search of the defendant's person could not be justified on the basis that it was made incident to the issuance of a traffic citation to the defendant. 525 U.S. at 114, 119 S.Ct. at 486, 142 L.Ed.2d at 496. In addition, in *Minnesota v. Dickerson*, 508 U.S. 366, 378, 113 S.Ct. 2130, 2138–39, 124 L.Ed.2d 334, 347 (1993), the United States

Supreme Court held that an officer violated the Fourth Amendment, and went beyond a permissible *Terry* pat down, when he reached into the defendant's pocket without any basis to believe that it contained a weapon. The record in the present case shows that the State introduced no evidence that officer Glenn discovered anything in her pat down of Cline that led Glenn to believe that Cline's pocket contained a weapon or other contraband. Therefore, *Dickerson* appears to govern.

determined by an objective standard. *See State v. Jones,* 586 N.W.2d 379, 382 (Iowa 1998). Consequently, the legality of a search and seizure under circumstances such as those present here "does *not* depend on the actual motivation of the individual officers involved." *State v. Predka,* 555 N.W.2d 202, 205 (Iowa 1996); *accord Whren v. United States,* 517 U.S. 806, 812, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89, 97 (1996) ("Not only have we never held, outside the context of inventory search or administrative inspection . . . , that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary."); 2 Wayne R. La-Fave, *Search and Seizure* § 3.2(b), at 34–36 (3d ed.1996). Therefore, the State is not limited to the reasons stated by the investigating officer in justifying the challenged search or seizure. *See Florida v. Royer,* 460 U.S. 491, 507, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229, 242 (1983) (plurality opinion) (holding that an officer's testimony at the suppression hearing that there was no probable cause and that the search was consensual or based on *Terry* did not preclude the state from arguing that the search was justified on the basis of probable cause); *Predka,* 555 N.W.2d at 206 (holding that probable cause, not the motivation of the arresting officer, determines whether the stop of a vehicle is valid). Our prior cases to the contrary are overruled. *See State v. Wiese,* 525 N.W.2d 412, 415 (Iowa 1994); *State v. Rosenstiel,* 473 N.W.2d 59, 61 (Iowa 1991); *State v. Aschenbrenner,* 289 N.W.2d 618, 619 (Iowa 1980). Applying the appropriate legal principles to the case before us, we con-clude the fact that officer Glenn did not mention probable cause as a basis for her search of the defendant does not prevent the State from proving the existence of probable cause to uphold the search.

We will now discuss the issues raised by the State: (1) the existence of probable cause; and (2) the good faith exception to the exclusionary rule. Although the district court did not rule on the applicability of the good faith exception because its ruling that the search was constitutional made it unnecessary to consider whether the evidence should be excluded, this court may still decide the issue on appeal where it was raised in the district court. *See Chauffeurs, Teamsters & Helpers, Local Union No. 238 v. Iowa Civil Rights Comm'n,* 394 N.W.2d 375, 378 (Iowa 1986).

## IV. *Probable Cause.*

The Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution protect persons from unreasonable searches and seizures.[2] *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8. The Fourth Amendment guarantee against unreasonable searches is applicable to the states via the Fourteenth Amendment. *See Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961). Because the language of article I, section 8 of the Iowa Constitution is nearly identical to the Fourth Amendment, the two provisions are generally " 'deemed to be identical in scope, import, and purpose.' " *State v. Bishop,* 387 N.W.2d 554, 557 (Iowa 1986) (quoting *State v. Groff,* 323 N.W.2d 204, 207 (Iowa 1982)). Therefore, although our discussion

---

**2.** The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Iowa Constitution similarly provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized.

Iowa Const. art. 1, § 8.

of probable cause will focus on the Fourth Amendment, our analysis of this issue is equally applicable to the defendant's claim under the Iowa Constitution.

▮ A warrantless search, such as the one in this case, is per se unreasonable unless it falls within a recognized exception. *See Cadotte*, 542 N.W.2d at 836. One such exception exists where there is probable cause for the search, and exigent circumstances require that the search be conducted immediately. *See id.* The State has the burden to prove by a preponderance of the evidence that the search falls within an exception. *See id.*

▮ In the context of a warrantless search, probable cause exists "when a reasonably prudent person would believe that evidence of a crime will be discovered in the place to be searched." *State v. Moriarty*, 566 N.W.2d 866, 868 (Iowa 1997). *See generally* 2 Wayne R. LaFave, *Search and Seizure* § 3.2(c), at 38 (3d ed.1996) (discussing necessity of viewing circumstances from standpoint of the officer, guided by his training, knowledge, and experience, rather than from the viewpoint of an average citizen). On the other hand, where the officer has mere suspicions of criminal conduct, only a pat-down search of the person for weapons is justified. *See Terry*, 392 U.S. at 29–30, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 910–11.

A recent United States Supreme Court case is enlightening with respect to the distinction between mere suspicion and probable cause. In *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the Court considered the constitutionality of a pat-down search for weapons. The record showed that the officer who conducted the search observed the defendant in an area known for heavy narcotics trafficking. *Wardlow*, 528 U.S. at ——, 120 S.Ct. at 674, 145 L.Ed.2d at 574. As the officer's vehicle approached the defendant, the defendant looked in the direction of the vehicle and fled. *Id.* at ——, 120 S.Ct. at 675, 145 L.Ed.2d at 575.

The police officer chased the defendant and, upon the defendant's apprehension, immediately conducted a protective pat-down search. *Id.* The officer then searched the interior of a bag the defendant was carrying after the officer had squeezed the bag and felt a heavy, hard, gun-shaped object. *Id.* The officer found a handgun. *Id.* The disputed issue in the case was whether the defendant's flight from the police in a drug-trafficking area gave rise to a reasonable suspicion of criminal conduct so as to justify a *Terry* stop. *Id.*

The Court first noted that "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Id.* at ——, 120 S.Ct. at 676, 145 L.Ed.2d at 576 (citing *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357, 362–63 (1979)). The Court stated, however, that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Id.* Thus, the Court held, the defendant's presence in an area known for drug-related activity coupled with his flight from the police justified a *suspicion* that the defendant was involved in criminal activity and, accordingly, an investigative stop and safety pat down. *Id.* at ——, 120 S.Ct. at 676, 145 L.Ed.2d at 576–77. The Court noted that if an officer in such circumstances did not discover any facts during his investigation "rising to the level of probable cause, the individual must be allowed to go on his way." *Id.* at ——, 120 S.Ct. at 677, 145 L.Ed.2d at 577. Four members of the Court dissented from the Court's finding of reasonable suspicion, believing that the circumstances did not even justify a *Terry* stop and frisk. *Id.* at ——, 120 S.Ct. at 677, 145 L.Ed.2d at 578 (Stevens, J., concurring in part and dissenting in part).

The case upon which the State relies to support its contention that probable cause existed, *State v. Bumpus*, 459 N.W.2d 619 (Iowa 1990), is helpfully contrasted to

*Wardlow.* In *Bumpus,* the defendant was seen in an area of ongoing drug activity, crouched behind a car with other individuals "exchanging something." 459 N.W.2d at 621. As the police officers drove into the parking lot where the defendant was present, the defendant began to run and attempted to conceal a black pouch from the officers' view. *Id.* An officer conducted a warrantless search of the defendant and the pouch, and discovered crack cocaine. *Id.* This court held that the officer had probable cause to search the defendant based on (1) the specific location where the activity took place, one noted for ongoing drug activity, (2) the defendant's and his companions' actions, which indicated a drug transaction, (3) the defendant's flight, and (4) the defendant's attempts to conceal the pouch he was holding. *Id.* at 623–24.

When we compare the facts of the present case to *Wardlow* and *Bumpus,* we conclude that the present case is virtually indistinguishable from *Wardlow.* The premises where the defendant was spotted was known to police to be a site for illegal drug activity. In addition, when the officers arrived, the defendant tried to leave the scene without being detected. However, the additional facts present in *Bumpus* —that the defendant was seen in some sort of transaction with others and tried to conceal something from the police—were not present in *Wardlow* and are not present here. We hold, therefore, that, as in *Wardlow,* Cline's presence in an area of drug dealing and her flight from police gave rise to a reasonable *suspicion* that the defendant *may be involved* in illegal activity, but these facts do not rise to the level of probable cause to *believe* that the defendant has *actually committed* a crime. Consequently, the search of Cline's person cannot be justified on the basis of probable cause. Therefore, the search violated the Fourth Amendment of the United States Constitution and article 1, section 8 of the Iowa Constitution.

## V. *The Federal Exclusionary Rule and its Good Faith Exception.*

The State claims that, even if the search was unconstitutional, the good faith exception to the exclusionary rule, recognized in *Leon* and *Krull,* applies here to avoid suppression of the evidence found on Cline. We need not decide, however, whether the good faith exception applicable to Fourth Amendment claims would preclude reliance on the exclusionary rule under the facts of this case because we decline to adopt a good faith exception to Iowa's exclusionary rule under the Iowa Constitution. We set the stage for our analysis with a brief review of the development of the exclusionary rule under federal law.

The United States Supreme Court adopted the exclusionary rule in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). In holding that evidence gained in a warrantless search of the defendant's house could not be used in the criminal prosecution of the defendant, the Court stated:

If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the 4th Amendment, declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land.... To sanction such proceedings would be to affirm by judicial decision a manifest neglect, if not an open defiance, of the prohibitions of the Constitution, intended for the protection of the people against such unauthorized action.

232 U.S. at 393–94, 34 S.Ct. at 344–45, 58 L.Ed. at 656. In *Mapp,* the Court held

that this rule "of constitutional origin" was applicable to the states. 367 U.S. at 649, 660, 81 S.Ct. at 1688, 1694, 6 L.Ed.2d at 1086, 1093. The Court noted that its decision

> gives to the individual no more than that which the Constitution guarantees him, to the police officer no less than that to which honest law enforcement is entitled, and, to the courts, that judicial integrity so necessary in the true administration of justice.

*Id.* at 660, 81 S.Ct. at 1694, 6 L.Ed.2d at 1093.

Over time the Court has distanced itself from these early cases. Though not disavowing the exclusionary rule, the Court has stated that the rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561, 571 (1974). Accordingly, in *Leon,* when the Court considered whether a good faith exception to the exclusionary rule should be adopted, it started with the premise that the rule's application should be limited to those situations in which it accomplished its deterrent effect. 468 U.S. at 909, 104 S.Ct. at 3413, 82 L.Ed.2d at 690. Moreover, the Court noted that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916, 104 S.Ct. at 3417, 82 L.Ed.2d at 694. In addition, the Court indicated its belief that suppression of illegally obtained evidence would not "have a significant deterrent effect on the issuing judge or magistrate," nor did the Court view the exclusionary sanction as a meaningful way "to inform judicial officers of their errors." *Id.* at 916–17, 104 S.Ct. at 3417, 82 L.Ed.2d at 694–95. Thus, the Court "questioned whether the exclusionary rule can have any deterrent effect when the offending officers acted in the objectively reasonable belief that their conduct did not

violate the Fourth Amendment." *Id.* at 918, 104 S.Ct. at 3418, 82 L.Ed.2d at 696. Because, in the Court's view, the deterrent effect under such circumstances is "marginal or nonexistent," the Court held it could not justify "the substantial costs of exclusion." *Id.* at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698.

The Court applied the good faith exception under different factual circumstances in *Krull.* In that case, the police obtained evidence in a warrantless search authorized by a state statute that was subsequently declared unconstitutional. *Krull,* 480 U.S. at 343–44, 107 S.Ct. at 1163–64, 94 L.Ed.2d at 370–71 (statute authorized warrantless administrative search of records maintained by persons licensed to sell motor vehicles). The United States Supreme Court held that suppression of the evidence was not required because the *Leon* good faith exception to the exclusionary rule applied. *Id.* at 349, 107 S.Ct. at 1167, 94 L.Ed.2d at 375. The Court stated:

> Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written.

*Id.* at 349–50, 107 S.Ct. at 1167, 94 L.Ed.2d at 375.

■ At this point in our analysis it is important to consider the effect of these federal cases on our determination of the state constitutional issue. As we have already observed, given the similar wording of the Fourth Amendment and Iowa's search and seizure clause, these provisions are generally considered to be "identical in scope, import, and purpose." *State v. Beckett,* 532 N.W.2d 751, 755 (Iowa 1995). On the other hand, there is no principle of law that requires this court to interpret

the Iowa Constitution in line with the United States Constitution, as long as our interpretation does not violate any provision of the federal constitution. *See State v. James,* 393 N.W.2d 465, 466 (Iowa 1986); *State v. Olsen,* 293 N.W.2d 216, 219 (Iowa 1980); *Des Moines Joint Stock Land Bank v. Nordholm,* 217 Iowa 1319, 1335, 253 N.W. 701, 709 (1934). In other words, although this court cannot interpret the Iowa Constitution to provide *less* protection than that provided by the United States Constitution, the court is free to interpret our constitution as providing *greater* protection for our citizens' constitutional rights. *See State v. Swaim,* 412 N.W.2d 568, 571 n. 1 (Iowa 1987).

In accordance with these general principles, we strive to be consistent with federal constitutional law in our interpretation of the Iowa Constitution, but we "jealously guard our right and duty to differ in appropriate cases." *Olsen,* 293 N.W.2d at 220. Indeed, the Iowa Constitution is declared to "be the supreme law of the State ...," Iowa Const. art. 12, § 1, and it is the responsibility of this court, not the United States Supreme Court, to say what the Iowa Constitution means, *see Hutchins v. City of Des Moines,* 176 Iowa 189, 205, 157 N.W. 881, 887 (1916). Therefore, our court would abdicate its constitutional role in state government were it to blindly follow federal precedent on an issue of state constitutional law. With this background, we turn now to an examination of the issue under principles of state law.

## VI. *State Search and Seizure Clause— Good Faith Exception to the Exclusionary Rule.*

Having established that this court is free to reject the good faith exception of *Leon* and *Krull* under our state constitution, we must assume the task of independently evaluating the compatibility of a good faith exception with the Iowa Constitution's guarantee against unreasonable searches and seizures. We begin our discussion with a review of the scope and meaning of

Iowa's search and seizure clause. We then evaluate the rationale of the federal decisions adopting the good faith exception to determine the soundness of the Court's analysis, for "[i]f precedent is to have any value it must be based on a convincing rationale." *James,* 393 N.W.2d at 472 (Lavorato, J., dissenting). Our final step will be to determine whether the federal good faith exception to the exclusionary rule is consistent with Iowa law.

■■ A. *Iowa's search and seizure clause.* The search and seizure provision in the Iowa Constitution protects an individual's privacy with respect to his person and his home from unwarranted invasion by the government. *See Girard v. Anderson,* 219 Iowa 142, 148, 257 N.W. 400, 402 (1934); *State v. Sheridan,* 121 Iowa 164, 166, 96 N.W. 730, 731 (1903). This court noted as early as 1902 that "[t]his guaranty ... has ... received a broad and liberal interpretation for the purpose of preserving the spirit of constitutional liberty." *State v. Height,* 117 Iowa 650, 661, 91 N.W. 935, 938 (1902).

An example of this court's attempts to preserve the spirit of Iowa's constitutional guarantee is reflected in the fact that Iowa was one of the first states to embrace the exclusionary rule as an integral part of its state constitution's protection against unreasonable searches and seizures, and, in fact, did so several years before the United States Supreme Court's decision in *Weeks.* The genesis of Iowa's exclusionary rule was a civil case, *Reifsnyder v. Lee,* 44 Iowa 101 (1876). In that case, the plaintiff sought to garnish property in the possession of a police officer. *Reifsnyder,* 44 Iowa at 102. The property had been obtained in a search of an alleged thief who was arrested for stealing the plaintiff's property. *Id.* The purported thief challenged the garnishment on the basis that the property had been unlawfully taken from him by the police. *Id.* This court announced the general rule that "[a] party to a suit can gain nothing by fraud or violence under the pretense of process, nor

will the fraudulent or unlawful use of process be sanctioned by the courts." *Id.* The court stated that if the property had been taken unlawfully the parties would "be restored to the rights and position they possessed and occupied before they were deprived thereof." *Id.* Examining the facts surrounding the confiscation of the property, the court concluded that the search and seizure were legal and, therefore, the case did not come within the stated rule. *Id.* at 102–03.

The first application of the exclusionary rule in a criminal context occurred in the *Height* case, decided in 1902. *Height* involved a physical exam of the defendant against his will. 117 Iowa at 652, 91 N.W. at 935. This court held that the examination of the defendant violated the due process clause of the Iowa Constitution, as well as article 1, section 8's prohibition of unreasonable searches. *Id.* at 661, 91 N.W. at 938. Relying on the principles set forth in *Reifsnyder,* the court held that "all evidence with reference to information secured [by the unlawful examination] should have been excluded on defendant's objection." *Id.* at 665, 91 N.W. at 940.

The case that most clearly stands for the proposition that evidence obtained in violation of Iowa's search and seizure clause must be excluded is this court's decision in *Sheridan.* In that case a police officer searched the defendant's residence pursuant to a warrant issued by a justice of the peace. *Sheridan,* 121 Iowa at 165, 96 N.W. at 730–31. When evidence found in the search was offered at the defendant's criminal trial, the defendant objected, contending that the search violated article 1, section 8 of the Iowa Constitution. *Id.* at 165–66, 96 N.W. at 731. On appeal the State conceded that the search warrant "was issued without the authority of law" and that the seizure of items in the search was wrongful. *Id.* at 166, 96 N.W. at 731. The only issue in the case was whether the evidence should be suppressed under the rule applied in *Height.* *Id.* In holding that the evidence seized in the search of the defendant's home should be excluded, the court stated,

> [No case] can be found, we think, where the state has been permitted to obtain a search warrant in confessed violation of law, and thereby take papers or property from the home of the man suspected of the crime, and use the matter thus procured in securing his conviction. *To so hold is to emasculate the constitutional guaranty, and deprive it of all beneficial force or effect in preventing unreasonable searches and seizures.*

*Id.* at 168, 96 N.W. at 731 (emphasis added).

The exclusionary rule remained part of Iowa constitutional jurisprudence for twenty years until the case of *State v. Tonn,* 195 Iowa 94, 191 N.W. 530 (1923). In that case we discarded the exclusionary rule and held that evidence obtained in an unlawful search was admissible. *Tonn,* 195 Iowa at 106–07, 191 N.W. at 536. A careful reading of our decision reveals three reasons for our abandonment of the rule: (1) our observation that the "overwhelming weight of authority" from other states was in favor of the admission of illegally obtained evidence; (2) our belief that the enforcement of the criminal law would be "seriously handicapped"; and (3) our conclusion that another remedy existed in that "[a] trespassing officer is liable for all wrong done in an illegal search or seizure." *Id.* at 106–07, 191 N.W. at 535–36. The court's rejection of the exclusionary rule was not unanimous; two justices dissented. One dissenter noted that

> [i]t seems little less than solemn mockery for us to protest our devotion to the "sacred constitutional right," or our virtuous purpose to rigidly enforce it, and in the same breath declare our approval of the admission of "evidence without any inquiry as to how that evidence was obtained."

*Id.* at 119, 191 N.W. at 540 (Weaver, J., dissenting).

Iowa did not again have a state exclusionary rule until compelled to do so by the United States Supreme Court's decision in *Mapp. See State v. Taylor,* 260 Iowa 634, 642, 144 N.W.2d 289, 294 (1966); *State v. Hagen,* 258 Iowa 196, 204, 137 N.W.2d 895, 899 (1965). Since that time, this court has had few occasions to engage in an independent analysis of the exclusionary rule; we have primarily quoted from and relied on decisions of the United States Supreme Court in this area. *E.g., Groff,* 323 N.W.2d at 208 (stating that "the policy underlying the exclusion of illegally obtained evidence ... is to deter constitutionally violative police conduct"); *State v. Swartz,* 278 N.W.2d 22, 23, 26 (Iowa 1979) (stating that exclusionary rule is based on desire "to discourage unconstitutional acts by law enforcement officials" and employing a balancing test to decide whether rule should be extended to sentencing proceedings); *State v. King,* 256 N.W.2d 1, 6 (Iowa 1977) (noting exclusionary rule is a judicially created remedy for Fourth Amendment violations that rests primarily on "its purported tendency to deter police misconduct"). Acting consistently with the Supreme Court's decisions since *Mapp,* this court has refused to extend the exclusionary rule beyond the scope required by federal constitutional principles. *E.g., Kain v. State,* 378 N.W.2d 900, 902–03 (Iowa 1985) (refusing to apply exclusionary rule to probation revocation hearings); *Swartz,* 278 N.W.2d at 26 (refusing to extend exclusionary rule to sentencing hearings).

Despite this court's reluctance to extend the scope of the exclusionary rule to sentencing and probation revocation proceedings, our appellate courts have guarded the rule in its primary context—the criminal prosecution of the defendant. In *Latham v. Sullivan,* 295 N.W.2d 472 (Iowa App.1980), the defendant challenged the admission of evidence that he contended was obtained in an illegal and warrantless search of his apartment. 295 N.W.2d at 474 (considering claims under both the state and federal constitutions). The evi-

dence showed that the police had asked a magistrate to issue a warrant for the search, but the magistrate had concluded that a warrant was not necessary and had instructed the officers to proceed with the search without a warrant. *Id.* at 475. On appeal, the court of appeals held that the search was unconstitutional. *Id.* at 479. The State argued, nonetheless, that "application of the exclusionary rule would be inappropriate in light of the rationale that the exclusionary rule is intended to deter police conduct that is in violation of the fourth amendment." *Id.* at 480. The State contended that because the officers attempted to comply with the warrant requirement, but simply got bad advice from the magistrate, law enforcement should not be penalized by excluding the evidence. *Id.* The court of appeals rejected this defense, refusing to distinguish between constitutional violations by the police and constitutional violations by a magistrate. *Id.* The court explained, "Were we to hold otherwise, the warrant requirement would be relegated to a mere formality." *Id.*

This court has also rejected a good faith exception to the exclusionary rule where the warrant authorizing the search did not comply with statutory requirements. *See Beckett,* 532 N.W.2d at 754–55; *State v. Iowa Dist. Ct. for Black Hawk County,* 472 N.W.2d 621, 625 (Iowa 1991). In the *Black Hawk County* case, the magistrate issuing the warrant had failed to make a credibility finding as to the unnamed informant as required by Iowa Code section 808.3 (1989). 472 N.W.2d at 624. The State argued that this "technical infirmity" in the warrant should not result in suppression of the evidence obtained in the search, citing the good faith exception adopted in *Leon. Id.* We refused to apply the exception, noting that "[t]o condone such lack of compliance with the statute would amount to its judicial repeal." *Id.* at 625.

We employed similar reasoning in *Beckett.* In that case the magistrate issuing

the warrant had also failed to comply with section 808.3 by failing to make a specific finding that the confidential informant was credible. 532 N.W.2d at 754. This failure required the court to evaluate the magistrate's finding of probable cause without reference to the informant's information. *Id.* When considered in this light, the search warrant application failed to provide probable cause to support issuance of the search warrant. *Id.* The State, nevertheless, argued that the evidence obtained in the search should not be suppressed, citing *Leon's* good faith exception to the exclusionary rule. *Id.* We rejected the State's request to adopt the good faith exception:

> Adopting a good faith exception to the statutory requirement would effectively defeat the purpose of the statute because failure to comply with the statute would be of no consequence. In light of the clear purpose of section 808.3, permitting a good faith exception to failure to comply with the statute would be tantamount to judicial repeal of the statute.

*Id.* at 755.

As this review illustrates, the exclusionary rule in Iowa has a mixed history, beginning with the bold adoption of the rule in 1902, our subsequent abandonment of the rule in the face of overwhelming authority from other states rejecting the rule, our benign acceptance of the rule after *Mapp*, and finally our recent cases limiting the rule yet preserving its fundamental role in criminal prosecutions. Clearly, a definitive answer to the issue before us is not to be found in Iowa's case law. Therefore, we now consider, in the context of Iowa law, the soundness of the reasons underlying the good faith exception as explained by the Court in *Leon* and *Krull.*

■ *B. Validity of rationale for good faith exception.* As noted earlier, the United States Supreme Court based its adoption of the good faith exception to the exclusionary rule on the premise that the only purpose of the exclusionary rule was the deterrence of illegal police conduct. *Leon,* 468 U.S. at 916, 104 S.Ct. at 3417, 82 L.Ed.2d at 694; *accord Krull,* 480 U.S. at 347, 107 S.Ct. at 1165, 94 L.Ed.2d at 373. The Court concluded that the exclusionary rule "is neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered.'" *Leon,* 468 U.S. at 906, 104 S.Ct. at 3412, 82 L.Ed.2d at 687 (quoting *Stone v. Powell,* 428 U.S. 465, 540, 96 S.Ct. 3037, 3074, 49 L.Ed.2d 1067, 1114 (1976) (White, J., dissenting)); *accord Krull,* 480 U.S. at 347, 107 S.Ct. at 1165, 94 L.Ed.2d at 373. Nor, the Court decided, was the exclusionary rule necessary to deter unconstitutional conduct on the part of the judiciary or the legislature. *Krull,* 480 U.S. at 351, 107 S.Ct. at 1167–68, 94 L.Ed.2d at 376 (legislatures); *Leon,* 468 U.S. at 916, 104 S.Ct. at 3417, 82 L.Ed.2d at 694 (judicial officers). The Court then reasoned that the rule should be restricted to those situations where its purpose is advanced. *Leon,* 468 U.S. at 908, 104 S.Ct. at 3413, 82 L.Ed.2d at 689; *accord Krull,* 480 U.S. at 347, 107 S.Ct. at 1166, 94 L.Ed.2d at 373. In *Leon,* the Court concluded that the suppression of evidence based on the magistrate's error in issuing the search warrant would not deter law enforcement officers who "acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." 468 U.S. at 918, 104 S.Ct. at 3418, 82 L.Ed.2d at 696. Similarly, in *Krull,* the Court held that the exclusionary rule would not deter illegal police conduct when the officer, in conducting the search, has relied on a state statute that is not clearly unconstitutional. 480 U.S. at 349–50, 107 S.Ct. at 1167, 94 L.Ed.2d at 375. In view of the allegedly nonexistent deterrent effect of the rule under these various circumstances, the Court stated that application of the rule could not be justified in view of the "substantial costs of exclusion." *Leon,* 468 U.S. at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698; *accord Krull,* 480 U.S. at

352–53, 107 S.Ct. at 1168–69, 94 L.Ed.2d at 377.

■■■ 1. *Purpose of rule.* As this brief review of the rationale of the Court's decisions shows, the validity of the Court's analysis depends initially on the accuracy of the Court's underlying premise that the exclusionary rule's only purpose is to deter police misconduct and that the rule has no laudatory effect on the actions of the judicial or legislative branches. We disagree with both propositions.

Although more recent Supreme Court decisions, as represented by *Leon,* have narrowed the focus of the exclusionary rule to the deterrence of constitutional violations by law enforcement, the rule was originally justified for the additional reasons that it provided a remedy for the constitutional violation and protected judicial integrity. *See Mapp,* 367 U.S. at 656–57, 659, 81 S.Ct. at 1692, 1694, 6 L.Ed.2d at 1090–92. Regardless of whether one believes that the post-*Mapp* cases have revised the history of the exclusionary rule or merely refined the rule, we think the rule serves a purpose greater than simply deterring police misconduct. Clearly our early cases viewed the exclusionary rule as a remedy for the constitutional violation and relevant to the integrity of the courts. *See Sheridan,* 121 Iowa at 168, 96 N.W. at 731 (stating that to admit illegally obtained evidence would "emasculate the constitutional guaranty"); *Reifsnyder,* 44 Iowa at 102 (noting that the courts would not sanction the unlawful seizure of evidence by admitting it at trial). Even in the face of United States Supreme Court decisions stating that the purpose of the rule was simply to deter unlawful police action, our court stated that the exclusion of tainted evidence also "protect[s] the integrity of the judiciary." *State v. Hamilton,* 335 N.W.2d 154, 158 (Iowa 1983).

Our conclusion that the exclusionary rule provides a remedy for the constitutional violation finds support in decisions from other states. *E.g., State v. Guzman,* 122 Idaho 981, 842 P.2d 660, 671 (1992) (holding rule is a remedy for illegal searches and seizures); *State v. Canelo,* 139 N.H. 376, 653 A.2d 1097, 1105 (1995) ("The exclusionary rule serves to redress the injury to the privacy of the search victim . . . ."); *State v. Novembrino,* 105 N.J. 95, 519 A.2d 820, 856 (1987) ("The rule also serves as the indispensable mechanism for vindicating the constitutional right to be free from unreasonable searches."); *State v. Carter,* 322 N.C. 709, 370 S.E.2d 553, 557 (1988) (" 'the rule of exclusion is the only available remedy to protect society from the excesses which led to the constitutional right' " (quoting *Eleuteri v. Richman,* 26 N.J. 506, 141 A.2d 46, 49 (1958))). It is true, as the Supreme Court has noted, that suppression of the evidence does not "cure" the constitutional invasion, *see Leon,* 468 U.S. at 906, 104 S.Ct. at 3412, 82 L.Ed.2d at 687, but it is clearly the best remedy available. As with many civil remedies, the exclusionary rule merely places the parties in the positions they would have been in had the unconstitutional search not occurred, and the State is deprived only of that to which it was not entitled in the first place. *See Canelo,* 653 A.2d at 1105; *State v. Gutierrez,* 116 N.M. 431, 863 P.2d 1052, 1067 (1993).

As this court has stated, the exclusionary rule also protects the integrity of the courts. *See Hamilton,* 335 N.W.2d at 158; *accord Guzman,* 842 P.2d at 671; *Canelo,* 653 A.2d at 1105; *Gutierrez,* 863 P.2d at 1068 (citing *Sheridan,* 121 Iowa at 166–67, 96 N.W. at 731). The reasoning that leads to this conclusion is obvious. By admitting evidence obtained illegally, courts would in essence condone the illegality by stating it does not matter how the evidence was secured. But it ought to matter, as the Kansas federal district court observed many years ago:

> [S]hall this court wink at the unlawful manner in which the government secured the proofs now desired to be used, and condone the wrong done defendants by the ruthless invasion of their constitutional rights, and become a party to

the wrongful act by permitting the use of the fruits of such act? Such is not my conception of the sanctity of rights expressly guaranteed by the Constitution to a citizen.

*United States v. Mounday*, 208 F. 186, 189 (D.Kan.1913). We agree. Judges would become accomplices to the unconstitutional conduct of the executive branch if they allowed law enforcement to enjoy the benefits of the illegality.

Even if we were to accept the Court's proposition that the exclusionary rule is aimed solely at deterrence, we cannot accept the Court's limitation on the deterrence function to law enforcement. Common sense tells us that the exclusionary rule prompts more care and attention at all stages of the warrant-issuing process, including by the judicial officers issuing the warrant. *See State v. Marsala*, 216 Conn. 150, 579 A.2d 58, 67 (1990) ("we cannot agree that the rule as it stood before *Leon* was not a significant factor inducing judges to take seriously their obligation to ensure that the probable cause requirement ... had been met before issuing search warrants"); *Guzman*, 842 P.2d at 672 (stating that rule influences judicial behavior and "encourage[s] thoroughness in the warrant issuing process"); *State v. Oakes*, 157 Vt. 171, 598 A.2d 119, 125 (1991) (noting the exclusionary rule promotes "institutional compliance" with the Fourth Amendment). The same can be said for legislative action. The knowledge that an unconstitutional statute will be of no assistance to law enforcement will certainly tend to encourage lawmakers to take care to ensure that any law they enact passes constitutional muster. *See State v. White*, 97 Wash.2d 92, 640 P.2d 1061, 1070 (1982) ("The need for deterrence of such legislative conduct in the future is as essential as deterring unlawful police action."). Thus, the exclusionary rule serves a deterrent function even when the police officers act in good faith. Consequently, to adopt a good faith exception would only encourage lax practices by government officials in all three branches of government. *See Marsala*, 579 A.2d at 67; *Guzman*, 842 P.2d at 676; *People v. Sundling*, 153 Mich.App. 277, 395 N.W.2d 308, 314 (1986); *Novembrino*, 519 A.2d at 854; *People v. Bigelow*, 66 N.Y.2d 417, 497 N.Y.S.2d 630, 488 N.E.2d 451, 458 (1985); *Oakes*, 598 A.2d at 125.

2. *Consequences of exception.* Not only is the Court's rationale in support of the good faith exception suspect, it also ignores the grave consequences of the significant limitation imposed on the exclusionary rule by the good faith exception. This limitation dilutes the constitutional right to be protected against unreasonable searches and seizures. The situation before us is clearly analogous to our recent cases rejecting a good faith exception when the illegality of the search resulted from a failure to comply with a statute governing the issuance of warrants. *See Beckett*, 532 N.W.2d at 754–55; *Iowa Dist. Ct. for Black Hawk County*, 472 N.W.2d at 625. This court concluded in *Beckett* that to overlook the statutory violation by allowing the results of the illegal search to be introduced into evidence "would effectively defeat the purpose of the statute" and "would be tantamount to judicial repeal of the statute." *Beckett*, 532 N.W.2d at 755. The same conclusion is appropriate when the illegality is constitutional in origin.

Adopting a good faith exception would effectively defeat the purpose of the search and seizure clause. In the future, so long as the police act in good faith, probable cause would not be required for a warrant. As one court has observed, the probable cause standard would be replaced by a standard of "close enough is good enough." *Marsala*, 579 A.2d at 68; *accord Sundling*, 395 N.W.2d at 314 (noting that adoption of a good faith exception "'would, in effect, remove the probable cause requirement from the Fourth Amendment'" (quoting *People v. David*, 119 Mich.App. 289, 326 N.W.2d 485, 488 (1982))); *see also Carter*, 370 S.E.2d at 559 ("The exclusionary sanc-

tion is indispensable to give effect to the constitutional principles prohibiting unreasonable search and seizure."); *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 899 (1991) ("To adopt a 'good faith' exception to the exclusionary rule, we believe, would virtually emasculate those clear safeguards which have been carefully developed under the Pennsylvania Constitution over the past 200 years."). The New Mexico Supreme Court aptly observed that the framers of the New Mexico Constitution "meant to create more than 'a code of ethics under an honor system.'" *Gutierrez*, 863 P.2d at 1067. We think the framers of the Iowa Constitution had something more substantial in mind as well.

A second undesirable consequence of the adoption of a good faith exception is that persons subjected to an unconstitutional search or seizure would generally be left with no remedy at all. In our early *Tonn* case, we observed that the exclusionary rule was unnecessary to enforce the constitutional right because other remedies were available. Whatever truth there may have been to this statement when it was made, it is not valid today. There is simply no meaningful remedy available to one who has suffered an illegal search other than prohibiting the State from benefiting from its constitutional violation. A civil remedy would probably be unsuccessful because the good faith that prevents exclusion would also preclude an action for damages. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 410 (1982) (holding, in § 1983 action, that government officials are generally "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *Harryman v. Hayles*, 257 N.W.2d 631, 638 (Iowa 1977) (requiring proof of negligence in actions against government employees), *overruled on other grounds by Miller v. Boone County Hosp.*, 394 N.W.2d 776, 781 (Iowa 1986). Even criminal culpability is premised on malice, which logically cannot coexist with good faith. *See* Iowa Code § 808.10 (1999) (making it a serious misdemeanor to "maliciously and without just cause" procure a warrant). Thus, we agree with the observation that "there is but one alternative to the rule of exclusion. That is no sanction at all." *Wolf v. Colorado*, 338 U.S. 25, 41, 69 S.Ct. 1359, 1372, 93 L.Ed. 1782, 1793 (1949) (Murphy, J., dissenting), *overruled by Mapp*, 367 U.S. at 653, 81 S.Ct. at 1691, 6 L.Ed.2d at 1089.

Another adverse consequence of the good faith exception is that less guidance will be provided to law enforcement authorities and judicial officers with respect to the parameters of reasonable searches and seizures. *See Guzman*, 842 P.2d at 677; *Oakes*, 598 A.2d at 126.

> [I]t is in close fourth amendment cases that new law is made and guidance to magistrates and the police is most needed. Close cases are both the hardest to decide and the easiest to dispose of under the good faith exception; in such cases the officer's objective good faith is clearest. Thus, these are the cases that defendants are least likely to litigate and the courts most likely to dispose of without reaching the merits of the fourth amendment claim.

Silas Wasserstrom & William J. Mertens, *The Exclusionary Rule on the Scaffold: But was it a Fair Trial?* 22 Am.Crim. L.Rev. 85, 112 (1984). Lest we think this result would not come to pass, we need only look at our own Fourth Amendment cases pre-dating the exclusionary rule. These cases clearly show that, in the absence of possible suppression, the court will avoid deciding the legality of the search itself. *E.g., State v. Smith*, 247 Iowa 500, 503, 73 N.W.2d 189, 190 (1955) (not addressing the legality of the search because suppression of the evidence was not required in any event); *State ex rel. Kuble v. Bisignano*, 238 Iowa 1060, 1066, 28 N.W.2d 504, 508 (1947) (making no decision on the lawfulness of the search and

seizure because the evidence was admissible regardless of whether the search violated constitutional protections). This consequence in and of itself would surely result in a gradual eroding of protections against unreasonable searches and seizures as those officials authorizing and conducting such searches and seizures would be left without guidance on the constitutionality of their actions in the most problematic circumstances.

3. *Accuracy of Court's cost-benefit analysis.* As a final matter, we must express our disagreement with the cost-benefit analysis employed by the Court. As noted earlier, the Court considered the costs of exclusion to be substantial. This conclusion is simply not supported, however, by studies that have attempted to quantify the number of prosecutions adversely affected by the suppression of illegally obtained evidence. According to one authority in this area, "[t]he most careful and balanced assessment conducted to date of all available empirical data shows 'that the general level of the rule's effects on criminal prosecutions is marginal at most.'" 1 Wayne R. LaFave, *Search and Seizure* § 1.3(c), at 58 (3d ed.1996) (quoting Thomas Y. Davies, *A Hard Look at What We Know (and Still Need to Learn) About the "Costs" of the Exclusionary Rule: The NIJ Study and Other Studies of "Lost" Arrests*, 1983 Am. B. Found. Res. J. 611, 622). Even the Court in *Leon* cited a study discussed in the Davies article that concluded the exclusion of evidence "results in the nonprosecution or nonconviction of between 0.6% and 2.35% of individuals arrested for felonies." *Leon*, 468 U.S. at 907 n. 6, 104 S.Ct. at 3412 n. 6, 82 L.Ed.2d at 688 n. 6.

Even more important is the fact that the costs, regardless of their magnitude, are improperly attributed to the exclusionary rule. We agree with the following statements made by former Justice Stewart:

Much of the criticism leveled at the exclusionary rule is misdirected; it is more properly directed at the fourth amendment itself. It is true that, as many observers have charged, the effect of the rule is to deprive the courts of extremely relevant, often direct evidence of the guilt of the defendant. But these same critics sometimes fail to acknowledge that, in many instances, the same extremely relevant evidence would not have been obtained had the police officer complied with the commands of the fourth amendment in the first place.

. . . The exclusionary rule places no limitations on the actions of the police. The fourth amendment does. The inevitable result of the Constitution's prohibition against unreasonable searches and seizures and its requirement that no warrants shall issue but upon probable cause is that police officers who obey its strictures will catch fewer criminals . . . . T[hat] is the price the framers anticipated and were willing to pay to ensure the sanctity of the person, home and property against unrestrained governmental power.

Potter Stewart, *The Road to Mapp v. Ohio and Beyond: The Origins, Development and Future of the Exclusionary Rule in Search–and–Seizure Cases*, 83 Colum. L.Rev. 1365, 1392–93 (1983); *accord Guzman*, 842 P.2d at 674; *Oakes*, 598 A.2d at 124.

C. *Compatibility of good faith exception with article 1, section 8 of the Iowa Constitution.* One of the fundamental guarantees of the Iowa Constitution is the protection of its citizens against unreasonable searches and seizures. We believe that the only effective way to ensure that this right is more than mere words on paper is to exclude illegally obtained evidence. The reasonableness of a police officer's belief that the illegal search is lawful does not lessen the constitutional violation. For the reasons we have already discussed, the United States Supreme Court's rationale justifying the adoption of a good faith exception is neither sound nor persuasive. Therefore, we hold that the good faith exception is incompatible with the

Iowa Constitution.[3] This court will simply not "condone and approve a clear and known violation of a fundamental constitutional right in order to sustain a conviction that we think correct." *State v. McClelland,* 164 N.W.2d 189, 200 (Iowa 1969) (Becker, J., dissenting), *overruled by State v. Bester,* 167 N.W.2d 705, 707–08 (Iowa 1969). To do so would elevate the goals of law enforcement above our citizens' constitutional rights, a result not supported by any principle of constitutional law.

### VII. *Conclusion and Disposition.*

■ The warrantless search of the defendant violated the Fourth Amendment of the United States Constitution and article 1, section 8 of the Iowa Constitution because there was no probable cause to justify the search. Although suppression of the evidence obtained in this illegal search may not be required under federal law in view of the good faith exception recognized by the United States Supreme Court, no comparable exception to the exclusionary rule exists in Iowa. Therefore, the exclusionary rule applies and the district court erred in denying the defendant's motion to suppress the evidence discovered in the search of her person. Accordingly, we reverse the defendant's conviction and remand for a new trial.

**REVERSED AND REMANDED.**

All justices concur except CARTER, J., who takes no part.

---

**3.** Iowa is not alone in rejecting the good faith exception under its state constitution. The states of Alaska, *see Blank v. State,* 3 P.3d 359, 370 (Alaska Ct.App.2000), Connecticut, *see Marsala,* 579 A.2d at 68, Idaho, *see Guzman,* 842 P.2d at 677, Michigan, *see Sundling,* 395 N.W.2d at 315, New Hampshire, *see Canelo,* 653 A.2d at 1105, New Jersey, *see Novembrino,* 519 A.2d at 857, New Mexico, *see Gutierrez,* 863 P.2d at 1067–68, New York, *see Bigelow,* 497 N.Y.S.2d 630, 488 N.E.2d at 458, North Carolina, *see Carter,* 370 S.E.2d at 562, Pennsylvania, *see Edmunds,* 586 A.2d at 905–

06, and Vermont, *see Oakes,* 598 A.2d at 126–27, have done likewise. A lesser number of states have followed *Leon. See Crayton v. Commonwealth,* 846 S.W.2d 684, 689 (Ky. 1992); *State v. Brown,* 708 S.W.2d 140, 146 (Mo.1986); *State v. Wilmoth,* 22 Ohio St.3d 251, 490 N.E.2d 1236, 1238–39 (1986); *State v. Ward,* 231 Wis.2d 723, 604 N.W.2d 517, 531 (2000). Illinois has rejected the good faith exception only under *Krull*-type circumstances. *See People v. Krueger,* 175 Ill.2d 60, 221 Ill.Dec. 409, 675 N.E.2d 604, 612 (Ill. 1996).