# IN THE COURT OF APPEALS OF IOWA

No. 15-0101
Filed February 10, 2016

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**TROY RICHARD BROOKS,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rebecca Goodgame Ebinger, Judge.

The defendant appeals from the district court's denial of his motion to suppress evidence in his probation-revocation hearing.  **AFFIRMED.**

Grant C. Gangestad of Gourley, Rehkemper, & Lindholm, P.L.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee.

Heard by Danilson, C.J., and Vogel and Potterfield, JJ.

**DANILSON, Chief Judge.**

This discretionary appeal involves the issue of whether evidence obtained from a warrantless search of a probationer's residence should be suppressed and excluded as evidence in the resulting probation-revocation hearing. The defendant, Troy Brooks, maintains the search of his room was in violation of his Iowa Constitution article 1, section 8 expectation of privacy and the exclusionary rule should be applied to any evidence obtained.

The individuals performing the search bring to mind the movie character, Butch Cassidy, and his often repeated question, "Who are those guys?"[1] Here Butch Cassidy's question arises because the home search was conducted by individuals labeled as probation officers by the State, but who have the appearance of law enforcement officers.

We affirm because we believe we are bound by the supreme court's holding in *Kain v. State*, 378 N.W.2d 900, 902–03 (Iowa 1985), determining the exclusionary rule is not applicable to Brooks' probation-revocation proceedings.

**I. Background Facts and Proceedings.**

On October 22, 2013, Brooks pled guilty to the charges of conspiracy to manufacture a controlled substance (methamphetamine) without the sentencing enhancements and possession of a controlled substance (methamphetamine), third offense, without the habitual-offender enhancement.

---

[1] As Butch Cassidy and the Sundance Kid attempted to evade lawmen, even to the extent of traveling to Bolivia, the two were astounded that the same lawmen continued to track them to bring them to justice, evoking Cassidy to ask, "Who are those guys?" BUTCH CASSIDY AND THE SUNDANCE KID (Twentieth Century Fox Film Corporation 1969).

Brooks received a suspended sentence and was placed on probation for a period of two years. As part of his probation agreement, Brooks agreed to "submit to a search of [his] person, property, residence, vehicle, or personal effects at any time, with or without a search warrants or arrest warrant, if reasonable suspicion exists, by a peace officer or probation/parole officer." Additionally, he also agreed he would "not possess, ingest, or otherwise use any non-prescribed drug."

On September 15, 2014, Brooks was renting a room in his family's home. His father and sister called Michael Evans, Brooks' probation officer. Evans was at a court hearing in a different county and was unable to answer his phone. The pair left a voicemail stating Brooks had been using methamphetamine in the home and he was locked in his bedroom—where he had been since the day prior. Additionally, they stated Brooks used drugs "at least three times in the last month," had been missing work because of the drug use, and had been using baking soda to cover his drug testing. They requested immediate assistance at the home. After he received the message, Evans contacted his supervisor and two of his "coworkers," Ryan Smith and Lance Wignall, from the fugitive or warrant unit. He asked them to make a home visit in response to the call because he was unable to leave the court hearing.

The status of these "coworkers" was the subject of some questioning of Wignall at the suppression hearing.[2] Wignall explained that he is employed with the "Fifth Judicial District Department of Corrections" and he serves "in the

[2] Pursuant to Iowa Code section 907.2 (2013), "Probation officers employed by the judicial district department of correctional services, while performing the duties prescribed by that department, are peace officers."

fugitive unit" and is a "probation officer." He also testified his uniform says "Polk County Sheriff" and "police" on it and he carries a gun and handcuffs. He has been trained at the Iowa Law Enforcement Academy. He testified his duties differ from the average probation officer in that his "primary responsibility [is] for the apprehension of folks that abscond supervision as well as deal with situations that include home visits and high-risk situations." Evans also testified that he is employed with the Fifth Judicial District Department of Corrections as a fugitive unit officer, "which is also classified as a probation/parole officer." Smith did not testify at the suppression hearing.

Wignall and Smith responded to the call. When they arrived at the home, Brooks' father answered the door. Brooks' father told them that Brooks was upstairs and stated, "He's out of his mind." Wignall and Smith then went upstairs and announced themselves. They attempted to enter Brooks' room, but the door was locked or held shut. Eventually, the door opened, and they placed Brooks in handcuffs. Brooks and the room were covered in feces. Wignall and Smith noted that a large knife was on the ground, which appeared to have been used to prevent the door from opening by wedging it between the trim and the door. They conducted a cursory search of the room, and Brooks admitted that he had relapsed and used methamphetamine. Brooks stated he has a tendency to be "out of his mind" when he used the drug. Wignall and Smith arrested Brooks for probation violation; he was not charged with any new crimes as a result of the arrest.

Two days later, on September 17, 2014, Evans filed a report of a probation violation by Brooks.

Brooks filed a motion to suppress the evidence obtained during the search, and a hearing was held on October 22, 2014. At the hearing, Evans testified he would characterize the exchange with Brooks as a home visit because the "design of it . . . [was] to make contact and check for compliance." He also testified it was not a typical incident and was better classified as an emergency. He stated both Wignall and Smith were his coworkers and were also probation and/or parole officers. Wignall testified he and Smith announced themselves as "probation and parole" once they reached Brooks' door. Brooks appeared to be disoriented when the door to his room opened, and it was unclear if Brooks had opened the door or if the continued knocking had knocked the knife loose and the door free. Additionally, Brooks' father had consented to Wignall and Smith entering the home and Brooks' room. On cross-examination, Wignall testified he is a certified peace officer—his uniform states "police" and "Polk County Sheriff" on it and he wears a visible firearm and handcuffs. He also testified that although he is a parole/probation officer, he does not supervise cases and does not, as a typical part of his job, conduct home visits. Wignall's job duties are "with the warrant team," and his "specific function is to make arrests for other probation or parole officers" when the probationer or parolee has violated the conditions. Brooks also testified at the suppression hearing. He testified Wignall and Smith identified themselves as "warrant team" when they knocked on his door and they eventually forced themselves in, which caused damage to the door frame. Additionally, Brooks admitted he had used methamphetamine at a friend's house on September 15, 2014, and he was still under the effect of the methamphetamine when Wignall and Smith arrived at the

residence. It was undisputed they did not have a warrant and did not provide Brooks his *Miranda* rights.[3]

The district court denied Brooks' motion, finding that his article 1, section 8 privacy rights were not violated because supervision of probationers is a "special need" of the State that justifies a departure from the typical warrant requirement. Additionally, the court determined that even if Brooks' rights had been violated, any evidence obtained was not subject to exclusion in a probation-revocation proceeding.

In the subsequent probation-revocation hearing, on January 9, 2015, the district court found by a preponderance of the evidence that Brooks had violated the terms of his probation. His probation was revoked, and the original sentence was imposed.

Brooks filed an application for discretionary review of the district court's decision to revoke his probation based on evidence obtained through the warrantless search. Our supreme court granted the application and transferred the case to us.

**II. Standard of Review.**

Claims the district court failed to suppress evidence obtained in violation of the Iowa Constitution are reviewed de novo. *State v. Short*, 851 N.W.2d 474, 478 (Iowa 2014).

---

[3] At the suppression hearing, Brooks maintained his statement about using methamphetamine should be suppressed on the grounds that his *Miranda* rights were violated. He does not raise that argument here.

**III. Discussion.**

Brooks maintains the search of his room violated his article 1, section 8 privacy rights. He maintains the evidence obtained as a result of the intrusion should have been suppressed and excluded from the court's consideration at his probation-revocation hearing. In response, the State maintains even if there was an unconstitutional search of Brooks' room, any evidence obtained—including Brooks' statement about having used methamphetamine—was properly considered by the district court during the probation-revocation hearing. We agree with the State's assertion.

In *Kain*, our supreme court considered whether the exclusionary rule is applicable to a probation-revocation hearing. 378 N.W.2d at 902–03. The court was asked to consider the question under both the Fourth Amendment to the Federal Constitution and article 1, section 8 of the Iowa Constitution. *Kain*, 378 N.W.2d at 901. In considering federal precedent, the court cited a Ninth Circuit case, which stated:

> An important aspect of our probation system is the placing of certain restrictions on the probationer, such as the requirement that he not associate with criminals or travel outside the judicial district. These conditions serve a dual purpose in that they enhance the chance for rehabilitation while simultaneously affording society a measure of protection. Because violation of probation conditions may indicate that the probationer is not ready or is incapable of rehabilitation by integration into society, it is extremely important that *all reliable* evidence shedding light on the probationer's conduct be available during probation revocation proceedings.
>
> Consequently, to apply the exclusionary rule to probation revocation hearings would tend to frustrate the remedial purposes of the probation system. Not only would extension of the rule impede the court's attempt to assess a probationer's progress or regression, but also it would force probation officers to spend more of their time personally gathering admissible proof concerning those probationers who cannot or will not accept rehabilitation.

*Id.* at 902 *(*citing *United States v. Winsett*, 518 F.2d 51, 53–55 (9th Cir. 1975)). For the foregoing reasons, the court concluded the defendant's federal claim failed. *Kain*, 378 N.W.2d at 902.

The court also considered and denied the defendant's claim that the exclusionary rule was applicable to probation revocation hearings under article 1, section 8 of the Iowa Constitution. *Id.* The court rejected the defendant's contention for two reasons. *Id.* First, the court stated its "interpretation of article 1, section 8 has quite consistently tracked with prevailing federal interpretations of the fourteenth amendment in deciding similar issues." *Id.* Second, the court referenced its prior consideration of competing policy considerations and adoption of a constitutional balancing test to conclude the exclusionary rule should not be extended to probation revocation proceedings. *Id.* at 902–03 (citing *State v. Swartz*, 278 N.W.2d 22, 23–25 (Iowa 1979)).[4] Specifically, the court in *Kain* stated:

> [One reason] we reject Kain's plea for a different interpretation under the state constitution is our belief that we gave full consideration to all of the competing policy issues arising in the present case in [*Swartz*, 278 N.W.2d at 23-25]. In that case, we adopted, independently of any controlling federal precedent, a constitutional balancing test which does not require the extension of the exclusionary rule into the present area. We are reluctant to

---

[4] In *Swartz*, the court stated:
> Upon balancing the divergent policy considerations discussed, we conclude that evidence should not per se be inadmissible in a sentencing hearing solely upon the basis that, if tendered at trial, it would be subject to exclusion on constitutional grounds. We therefore decline to extend the exclusionary rule to those proceedings, absent some showing that the evidence in question was gathered in violation of the defendant's constitutional rights and for the express purpose of influencing the sentencing court. No such purpose was shown, or even claimed, in the present case.

278 N.W.2d at 26.

retract from these views in the present case and therefore reject Kain's claims under the state constitution.

378 N.W.2d at 902–03.

Since deciding *Kain*, our supreme court has rejected the "lockstep" approach to interpretation of the state constitutional provisions. *See State v. Ochoa*, 792 N.W.2d 260, 266–67 (Iowa 2010) ("[W]e now hold that, while United States Supreme Court cases are entitled to respectful consideration, we will engage in independent analysis of the content of our state search and seizure provisions.").

Additionally, in *State v. Cline*, 617 N.W.2d 277, 293 (Iowa 2000), *abrogated on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001), our supreme court parted ways with the United States Supreme Court when it declined to adopt a good faith exception to the exclusionary rule under the Iowa Constitution. Much of the court's reasoning concerned its disagreement with the United States Supreme Court's limitations on the purpose and use of the exclusionary rule. *See Cline*, 617 N.W.2d at 288–92. As our supreme court expressed, it is not true that the "only purpose [of the exclusionary rule] is to deter police misconduct and that the rule has no laudatory effect on the actions of the judicial or legislative branches." *Id.* at 289. The rule "provide[s] a remedy for the constitutional violation and protect[s] judicial integrity." *Id.* Additionally, the rule "merely places the parties in the position they would have been in had the unconstitutional search not occurred, and the State is deprived only of that to which it was not entitled in the first place." *Id.*

Since *Kain*, our supreme court has also decided a line of cases under article 1, section 8 of the Iowa Constitution establishing that parolees and probationers both retain a constitutionally-protected expectation of privacy in their home. *See Ochoa*, 792 N.W.2d at 291–92 (parolees); *see Short*, 851 N.W.2d at 506 (probationers). While the right has been extended, we acknowledge that our supreme court has not expanded the remedy—the application of the exclusionary rule—to probation-revocation proceedings. *See Short*, 851 N.W.2d at 505 ("There is substantial authority, for instance, for the proposition that while evidence obtained through home visits, or searches by probation officers, may not be used in new criminal prosecutions, it may be used for purposes of establishing a violation of probation or parole.").

Because *Kain* preceded *Cline* and *Short*, the principles espoused in *Kain* fail to consider the right of probationers to be free from unconstitutional searches of their homes when deciding the application of the exclusionary rule. We acknowledge the hard fact that Brooks faced no new criminal charges as a result of the search, and if the search was illegal, he is without a remedy unless the evidence is excluded in his probation-revocation proceedings. Thus, if the search was unconstitutional, Brooks' right to freedom from an illegal search of his home is cold comfort for a defendant facing a fifteen-year term of incarceration as a result of the search. Moreover, there would be no deterrent effect for such an unlawful search. Suppression of the evidence would simply put the parties back into the same position they were in before the unlawful activity. See *Cline*, 617 N.W.2d at 289.

Although we believe the reasoning of *Cline* could be extended to this case if the search was illegal,[5] our supreme court has not expressly overruled, abrogated, or otherwise disapproved of its holding in *Kain*.[6]  We are bound by *Kain* and, therefore, affirm.  Thus, we need not answer Butch Cassidy's intriguing question of "Who are those guys?"

**IV. Conclusion.**

Because our supreme court has not overruled its holding in *Kain* and we do not believe it is our place to do so, we affirm the district court's denial of Brooks' motion to suppress evidence obtained during the warrantless search of his room.

**AFFIRMED.**

---

[5] We have assumed for purposes of our analysis that the search was unconstitutional. To determine the constitutionality of the search, we would be required to determine if Wignall and Smith were probation officers or law enforcement officers.  *See Short*, 851 N.W.2d at 506 (concluding that in the absence of a search warrant or some other exception, a search of a probationer's home by law enforcement is in violation of article I, section 8 of the Iowa Constitution).

[6] Our court has had the opportunity to decide a similar case, *State v. Shoemaker*, No. 10–1294, 2011 WL 1817844, at *4 (Iowa Ct. App. May 11, 2011) (holding the district court properly considered evidence obtained through a warrantless search in a probation-revocation hearing).