# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2023-NMSC-025**

**Filing Date: September 5, 2023**

**No. S-1-SC-38937**

**STATE OF NEW MEXICO,**

      Plaintiff-Respondent,

v.

**RICKY ANTHONY AYON,**

      Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Christina P. Argyres, District Judge**

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
Meryl E. Francolini, Assistant Attorney General
Santa Fe, NM

for Respondent

Law Office of Scott M. Davidson
Scott M. Davidson
Albuquerque, NM

Law Office of Jamison Barkley, LLC
Jamison Barkley
Santa Fe, NM

Angelica Hall
Albuquerque, NM

for Amicus Curiae New Mexico Criminal Defense Lawyers Association

**OPINION**

**THOMSON, Justice.**

**{1}**     Under the New Mexico Constitution, the state can bring felony charges in one of two ways: by presenting charges and evidence to a grand jury composed of lay citizens or to a judge at a preliminary hearing. N.M. Const. art. II, § 14. In *State v. Martinez*, this Court held that a district court has no authority to review the admissibility of evidence considered by a grand jury. 2018-NMSC-031, ¶¶ 1, 39, 420 P.3d 568. This case requires us to make an analogous determination in the context of a Rule 5-302 NMRA[1] preliminary examination (hereinafter "preliminary hearing"). We hold that a district court judge presiding over a preliminary hearing has no authority to decide whether evidence was obtained from an unconstitutional search or seizure.

**{2}**     At his preliminary hearing, Defendant Ricky Ayon successfully challenged the legality of the stop that led to the search incident to his arrest, and the district court refused to bind Defendant over for trial on the charge of heroin possession. The Court of Appeals reversed. Because we agree with the Court of Appeals that the district court exceeded its authority at the preliminary hearing to rule on whether the evidence was obtained from an unconstitutional search or seizure, we affirm and remand for proceedings consistent with this opinion.

## I.     BACKGROUND

**{3}**     Defendant was walking with a bicycle and groceries on Isleta Boulevard in Albuquerque when a Bernalillo County Sheriff's Office deputy called out to him by name. When Defendant approached, the deputy immediately handcuffed him. After Defendant was in handcuffs, the deputy checked the National Crime Information Center (NCIC) database and found that Defendant had an active warrant. The deputy placed Defendant under arrest, then searched Defendant and found a small bag of a substance that field-tested as opiates.

**{4}**     The State charged Defendant by criminal information with possession of heroin pursuant to NMSA 1978, Section 30-31-23 (2011, amended 2021). At Defendant's preliminary hearing, the deputy explained what led to Defendant's arrest. He testified that he recognized Defendant from past encounters and was aware that Defendant frequented a house that often required the attention of the police. About a week prior to spotting Defendant on the street, the deputy searched the judiciary's public facing database for warrants on people known to frequent the house, including Defendant. Through that search, the deputy discovered that Defendant had a warrant. The deputy testified that Defendant was immediately handcuffed because he had run away from the deputy in the past. At the time the deputy handcuffed Defendant, the deputy did not

---

[1]Rule 5-302 NMRA (2017), effective for cases pending or filed after December 31, 2017, was in effect for the duration of the district court proceedings that gave rise to this appeal, and this rule has been amended twice since that time. While we have omitted date parentheticals in citations of this past rule, all references to the rule as it applies to this case reflect its 2017 amendment. Further, our holding in this case is consistent with the 2020 and current 2022 amendments to Rule 5-302.

know whether the warrant was still valid, and he noted that Defendant had not been doing anything illegal.

**{5}** As part of his defense at the preliminary hearing, Defendant argued that the deputy lacked reasonable suspicion to stop him because the deputy handcuffed Defendant before learning that Defendant had an active warrant through the NCIC database. The district court agreed, concluded that "the search was illegal," and declined to bind the case over for trial. The portion of the preliminary hearing devoted to argument on this issue was approximately two-and-one-half minutes. Neither party provided authority to establish whether a district court judge presiding over a preliminary hearing has authority to determine whether "the search was illegal," in effect to decide whether evidence was obtained from an unconstitutional search or seizure. In fact, no authority was cited by either party with reference to the deputy's stop of Defendant, and the district court cited no authority in explaining its decision.

**{6}** The State appealed, and the Court of Appeals reversed. *State v. Ayon*, 2022-NMCA-003, ¶ 1, 503 P.3d 405. The Court of Appeals concluded that the district court is without authority to determine at a preliminary hearing whether evidence was obtained illegally. *Id.* ¶¶ 1, 17. The Court of Appeals was persuaded that the reasoning in *Martinez* in the context of grand juries is applicable to preliminary hearings, given that both are aimed at a probable cause determination. *Id.* ¶ 11. It further concluded that no statute or court rule authorizes a district court to rule on the legality of the evidence presented at a preliminary hearing and noted several practical considerations that militate against Defendant's position. *Id.* ¶¶ 11-13, 15-16.

**{7}** We granted Defendant's petition for certiorari to determine whether the district court has the authority at a preliminary hearing to decide whether evidence was obtained from an unconstitutional search or seizure.[2]

## II.    DISCUSSION

**{8}** Defendant contends that the Court of Appeals erred in concluding that the district court has no authority to exclude illegally obtained evidence at a preliminary hearing for three reasons: (1) *Martinez* does not control the result in this case because there are substantial differences between grand jury proceedings and preliminary hearings; (2) the characteristics of preliminary hearings are such that, on balance, the district court should be allowed to exclude illegally obtained evidence at this stage in the proceeding; and (3) Article II, Section 10 of the New Mexico Constitution provides the right to exclude illegal evidence at preliminary hearings.

**{9}** We review interpretations of our rules of criminal procedure and questions of constitutional interpretation de novo. *State v. Adame*, 2020-NMSC-015, ¶ 7, 476 P.3d 872; *Allen v. LeMaster*, 2012-NMSC-001, ¶ 11, 267 P.3d 806.

---

[2]We do not address whether the district court correctly ruled that the evidence was obtained unconstitutionally because we conclude that the district court exceeded its authority to make that determination at the preliminary hearing.

**A.     The Relationship and Similarities Between Grand Jury Proceedings and Preliminary Hearings Favor Congruent Rules as to the Power to Decide if Evidence Was Obtained From an Unconstitutional Search or Seizure**

**{10}**     In *Martinez*, two defendants filed a motion in district court challenging their grand jury indictment on the ground that unlawful subpoenas were used to obtain information presented to the grand jury. 2018-NMSC-031, ¶¶ 2, 5-6. This Court concluded that an otherwise lawful grand jury indictment cannot be overturned "because of trial inadmissibility or improprieties in the procurement of evidence" presented to the grand jury. *Id.* ¶ 1. Accordingly, stated the *Martinez* Court, "suppression is a remedy for court determination in pretrial proceedings and is not one the grand jury is either equipped or called upon to decide." *Id.* ¶ 31.

**{11}**     The State argues that preliminary hearings "share a common purpose and an identical function" with grand jury proceedings and that *Martinez* therefore controls the result in this case. Defendant, arguing to the contrary, points out that the *Martinez* analysis is deeply rooted in the specific history and development of New Mexico grand jury practice and concludes that this analysis is inapplicable to preliminary hearings. *See Martinez*, 2018-NMSC-031, ¶¶ 15-25 (reviewing statutory and precedential history specific to grand juries). Defendant further argues that *Martinez* is inapplicable because preliminary hearings and grand juries "are different proceedings with entirely different structures."

**{12}**     The structure of a preliminary hearing is indeed very different from that of a grand jury proceeding. At a preliminary hearing, for example, the judge substantially controls the procedure, playing a much more prominent role than the judge at a grand jury proceeding. *See generally* Rule 5-302 (detailing time requirements and procedures administered by the district court judge). At a grand jury proceeding, the prosecutor is largely in control. *See Herrera v. Sanchez*, 2014-NMSC-018, ¶ 15, 328 P.3d 1176 ("The grand jury sits without direct supervision from the grand jury judge and fulfills its constitutional responsibilities with help from a prosecuting attorney."). At a preliminary hearing, the judge decides whether the state has demonstrated probable cause. Rule 5-302(D). But at a grand jury proceeding, a panel of "regular jurors" decides. NMSA 1978, § 31-6-1 (1983) (stating that at a grand jury proceeding all deliberations are conducted by jurors). Moreover, the rules of evidence do not apply at a grand jury proceeding, NMSA 1978, § 31-6-11(A) (2003), but are applicable at a preliminary hearing subject to limited exceptions, Rule 5-302(B)(5); *see* Rule 5-302.1 (Exceptions to rules of evidence for preliminary examinations).

**{13}**     The rights of the target of a grand jury proceeding are more limited than the rights of a defendant at a preliminary hearing. *Cf. Herrera*, 2014-NMSC-018, ¶ 16. The grand jury target and counsel for the target can be present only if the target testifies, and only during that testimony. *Id.*; *see also* § 31-6-4(B)-(D) (2003). Moreover, the target's counsel may not speak to the grand jury. *Herrera*, 2014-NMSC-018, ¶ 16; *see also* NMSA 1978, § 31-6-4(D). But at a preliminary hearing, "the defendant is permitted to be present with counsel throughout the duration of the proceedings, to cross-examine

the State's witnesses, and to call and subpoena witnesses on the defendant's own behalf." *Herrera*, 2014-NMSC-018, ¶ 16 (citing *generally* Rule 5-302).

**{14}** "Grand jury proceedings are conducted in secret," *Herrera*, 2014-NMSC-018, ¶ 16 (citing § 31-6-4(B)-(D)), and are inquisitorial, *Martinez*, 2018-NMSC-031, ¶ 17. Preliminary hearings are adversarial in nature, *Herrera*, 2014-NMSC-018, ¶ 16, and open to the public, NMSA 1978, § 34-1-1 (1972); Rule 5-124(A) NMRA. The aforementioned differences, among others, lead us to conclude that the grand jury analysis in *Martinez* does not control the result in this case.

**{15}** Nevertheless, fundamental similarities between grand jury proceedings and preliminary hearings favor our conclusion that their rules on the exclusion of illegally obtained evidence should be congruent.

**{16}** Despite their differences, grand juries and preliminary hearings are directly related. A defendant in New Mexico cannot be made to answer for a serious criminal offense unless there has first been a determination of probable cause by a grand jury or a judge at a preliminary hearing. *State v. Lopez*, 2013-NMSC-047, ¶ 2, 314 P.3d 236; *see also* N.M. Const. art. II, § 14. The state chooses between these alternatives. *State v. Peavler*, 1975-NMSC-035, ¶ 6, 88 N.M. 125, 537 P.2d 1387. And, as already stated, a district court cannot review the admissibility of evidence presented to the grand jury. *See Martinez*, 2018-NMSC-031, ¶ 39. Therefore, providing an avenue for defendants to bring suppression actions in a preliminary hearing would incentivize the state to proceed by grand jury indictment rather than preliminary hearing. *See* Fed. R. Crim. P. 5.1 advisory committee notes (stating that "the preliminary examination is not the proper place to raise the issue of illegally obtained evidence" because "[o]therwise there will be increased pressure on [prosecutors] to abandon the preliminary examination in favor of the grand jury indictment"). We acknowledge that the differences between grand jury proceedings and preliminary hearings may already incentivize one over the other in certain situations. *See* Kathryn D. Sears, *Better Balance: Why the Second Judicial District in New Mexico Should Prioritize Use of Preliminary Hearings*, 51 N.M. L. Rev 524, 538 (2021) (stating that for some cases a grand jury proceeding, where the rules of evidence do not apply, presents a "much simpler" way to bring felony charges). We are not inclined to add further imbalance between these two related alternatives for probable cause findings.

**{17}** Preliminary hearings and grand jury proceedings are not only related but are similar in at least two fundamental ways. They share a common primary purpose: to provide a neutral evaluation of whether the state has met its burden of demonstrating probable cause to prosecute a serious crime. *See State ex rel. Whitehead v. Vescovi-Dial*, 1997-NMCA-126, ¶ 5, 124 N.M. 375, 950 P.2d 818 ("The primary purpose of the preliminary examination is to provide an independent evaluation of whether the state has met its burden of demonstrating probable cause."); *Herrera*, 2014-NMSC-018, ¶ 15 (stating that one of two primary functions of a grand jury is to "determine whether there is probable cause to believe that the target of an investigation has committed a crime"). And there is a significant procedural similarity: in Lopez we noted that both are nontrial,

preliminary proceedings at the threshold of criminal prosecution at which guilt or innocence is not definitively determined. *Lopez*, 2013-NMSC-047, ¶¶ 18-19.

**{18}** In sum, *Martinez* does not control the result in this case. However, the fundamental similarities between grand jury proceedings and preliminary hearings support our adoption of congruent rules for both proceedings regarding the district courts' power to determine whether evidence was obtained from an unconstitutional search or seizure.

**B.      Prudential Considerations Also Favor Our Conclusion That the District Court Lacks the Power to Decide at a Preliminary Hearing Whether Evidence Was Obtained From an Unconstitutional Search or Seizure**

**{19}** According to Defendant, the prudential concerns raised by the Court of Appeals should not dissuade us from concluding that preliminary hearings are an appropriate stage to raise concerns about whether evidence was unlawfully obtained. Defendant argues that the district court should have the authority in any proceeding to evaluate whether evidence was illegally obtained because such authority is consistent with the judge's role at a preliminary hearing. Defendant emphasizes that the rules of evidence generally apply at a preliminary hearing. *See* Rule 5-302(B)(5). Accordingly, notes Defendant, judges at preliminary hearings already adjudicate and screen evidentiary issues including, for example, hearsay and privileged material. *See, e.g.*, Rule 11-802 NMRA (establishing, pursuant to our rules of evidence, that hearsay is generally not admissible). Defendant concludes that courts "routinely" address evidentiary issues at preliminary hearings, and therefore "[i]t is not clear [to Defendant] why ruling on search-and-seizure claims would be more onerous for a district court than addressing" these other issues.

**{20}** It is true that district courts already adjudicate evidentiary issues, but in our view there is much more to consider. Preliminary hearings take place on a brisk timeline, especially when the defendant is incarcerated. *See* Rule 5-302(A)(1) (providing for a ten-day time limit to hold a preliminary hearing if a defendant is in custody, and a sixty-day time limit otherwise). Actions to suppress evidence are not well-suited to such a tight timeline. Discovery is in its early stages, and it is limited by rule to the evidence in the state's possession. Rule 5-302(B)(2). There is no provision for briefing in the preliminary hearing rule, so both the facts and the arguments about whether evidence was illegally obtained are likely to be underdeveloped. The result can be insufficiently informed rulings. *See* 4 Wayne R. LaFave, et al., *Criminal Procedure* § 14.4(b), at 392 (4th ed. 2015) ("In jurisdictions where the [preliminary] hearing is held with exceptional promptness, . . . there often will not be adequate time for the two sides to investigate and prepare.").

**{21}** Defendant asserts that the district court was able to handle the suppression claim efficiently, noting that the preliminary hearing was only twenty-two minutes long. However, preliminary hearing suppression decisions would be subject to appeal. *See* NMSA 1978, § 39-3-3(B) (1972) (providing that the state can appeal orders suppressing evidence, excluding evidence, and dismissing a criminal information or indictment); §

39-3-3(A)(3) (providing an avenue for a defendant to bring an interlocutory appeal under limited circumstances). And such appeals can delay trials significantly. For example, Defendant's preliminary hearing took place more than three years ago.

**{22}** Rule 5-212 NMRA, which provides the procedure for district court motions to suppress evidence, is significant here for several reasons. We note first that the procedure we have established in Rule 5-212 is more conducive to a full and fair hearing on suppression issues because the time constraints are considerably more relaxed, discovery is far more robust, and the rule explicitly provides for written motions. *See* Rule 5-212(C) (establishing that a motion to suppress must be filed at least sixty days before trial absent good cause shown); Rule 5-302(B)(2) (limiting discovery at the preliminary hearing to the evidence in the state's possession); *see also* Rule 5-601 NMRA (establishing rules for motions at the trial stage of a criminal case in district court). Defendant's case illustrates the severe limitations of the preliminary hearing relative to our procedure for motions to suppress: no law was cited by either party in the two-minute suppression argument at the preliminary hearing, and no law was cited by the district court to explain its ruling.

**{23}** Also important is that the rules of evidence generally apply at a Rule 5-302 preliminary hearing but generally do not at a Rule 5-212 suppression hearing. *Compare* Rule 5-302(B)(5) ("The Rules of Evidence apply [at a preliminary hearing], subject to any specific exceptions in the Rules of Criminal Procedure for the District Courts."), *with State v. Rivera*, 2008-NMSC-056, ¶ 15, 144 N.M. 836, 192 P.3d 1213 ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." (internal quotation marks and citation omitted)). As expressed in our rules of evidence, judges have the flexibility to consider evidence not admissible at trial in deciding suppression issues. *See* Rule 11-104(A); *cf. United States v. Matlock*, 415 U.S. 164, 175 (1974) ("[I]n proceedings where the judge himself is considering the admissibility of evidence, the exclusionary rules, aside from rules of privilege, should not be applicable; and the judge should receive the evidence and give it such weight as his judgment and experience counsel.").

**{24}** Finally, and crucially, the availability of a Rule 5-212 suppression action already provides defendants with a pretrial opportunity to exclude inadmissible evidence and to avoid going to trial on the basis of inadmissible evidence. The trial is "the *only* point at which guilt or innocence may be definitively determined," and a number of other important procedural protections applicable at trial are inapplicable at the preliminary hearing stage of a prosecution: the right to be free from double jeopardy, the right to confrontation, and the right to a jury as factfinder. *Lopez*, 2013-NMSC-047, ¶¶ 2, 18 (emphasis added). We are mindful of the advantage to the defendant to be unburdened from a nonviable prosecution at the earliest possible point. *Cf. Vescovi-Dial*, 1997-NMCA-126 ¶ 6 ("[A] preliminary examination operates as a screening device to prevent hasty and unwise prosecutions and to save an innocent accused from the humiliation and anxiety of a public prosecution." (citing 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 14.1(a) (1984))). But to allow a defendant to raise suppression issues at the preliminary hearing is largely duplicative and not necessary for effective screening. *See* 1 Wayne R. LaFave, *Search and Seizure* § 1.6(d) (6th ed. 2020) (stating

that among the practical objections to allowing defendants to raise suppression issues at preliminary hearings is that doing so "'would require two determinations of admissibility'" (quoting Fed. R. Crim. P. 5.1 advisory committee notes)); 4 LaFave, *supra*, § 14.4(b), at 392 ("[A]llowing the defense to raise the suppression issue [at a pretrial hearing] is viewed as unnecessary to achieving effective screening" because a "suppression motion can still be utilized to gain a pretrial ruling that will exclude the evidence and thereby preclude a trial"); *id.* at 390 ("Like all evidentiary rulings at a preliminary hearing, the ruling on a challenge to evidence as illegally acquired will not be binding upon the trial court."). To adopt Defendant's position, this Court would risk turning preliminary hearings into minitrials on the legality of the evidence. *Cf. Lopez*, 2013-NMSC-047, ¶ 24 (concluding that it was "unworkable" to provide confrontation rights at all stages of a criminal proceeding, including preliminary hearings). We decline Defendant's invitation.

{25}   We pause here to address one additional concern raised by Defendant. Defendant argues that if the district court considers illegally obtained evidence at a preliminary hearing, the judge "participate[s] in the violation of the defendant's rights" and, quoting *State v. Gutierrez*, 1993-NMSC-062, ¶ 56, 116 N.M. 431, 863 P.2d 1052, becomes an "accomplice[] to unconstitutional executive conduct." Defendant further quotes our caution in *Gutierrez* that "[t]he real and perceived affront to the integrity of the New Mexico judiciary is a critical state interest that militates in favor of the exclusionary rule." *Id.* In the context of a preliminary hearing, we think Defendant is incorrect.

{26}   In *Gutierrez,* this Court rejected the use of illegally obtained evidence at trial as contrary to the New Mexico Constitution. *Gutierrez*, 1993-NMSC-062, ¶ 56. Our opinion does not alter or undermine the *Gutierrez* trial stage protections. And the use of illegal evidence for the ultimate determination of guilt or innocence has very different implications than the use of such evidence at a preliminary hearing because the later protections of Defendant's right to exclude illegal evidence still exist in full force. Our ruling today does not require district court judges to participate in rights violations, contrary to Defendant's claim.

**C.    The New Mexico Constitution Does Not Provide the Right at a Preliminary Hearing to Exclude Evidence Obtained From an Unconstitutional Search or Seizure**

{27}   Defendant's constitutional argument is somewhat tentative: arguing under Article II, Section 10 of the New Mexico Constitution, Defendant states that "New Mexico's law on the exclusionary rule *strongly suggests* that it attaches at the preliminary hearing stage." (Emphasis added.) We take Defendant's argument to be that Article II, Section 10 provides defendants with the right to exclude illegally obtained evidence at preliminary hearings.

{28}   When analyzing a claim of right under the New Mexico Constitution, we apply the interstitial approach. *State v. Gomez*, 1997-NMSC-006, ¶ 21, 122 N.M. 777, 932 P.2d 1. "Under the interstitial approach, the court asks first whether the right being asserted is

protected under the federal constitution. If it is, then the state constitutional claim is not reached. If it is not, then the state constitution is examined." *Id.* ¶ 19. The state constitution may provide additional protections "for three reasons: a flawed federal analysis, structural differences between state and federal government, or distinctive state characteristics." *Id.*

**{29}** Before addressing Defendant's specific arguments, we note three points. First, Defendant asserts that there is no "clear authority on whether the Fourth Amendment exclusionary rule applies at a preliminary hearing." We disagree. There clearly is no federal right to exclude illegally obtained evidence at a preliminary hearing. *See* Fed. R. Crim. P. 5.1(e) ("At the preliminary hearing, the defendant . . . may not object to evidence on the ground that it was unlawfully acquired."); *see also Giordenello v. United States*, 357 U.S. 480, 484 (1958) (holding that the court was without power at preliminary hearing to determine the admissibility of heroin taken from the defendant's person). Second, *Lopez* shows that not all constitutional rights are available at a preliminary hearing. 2013-NMSC-047, ¶ 26 ("[T]he right of confrontation . . . is a trial right that does not apply to probable cause determinations in preliminary examinations."). Third, *Martinez* shows that there is no broad right to suppress evidence at the probable cause stage under the New Mexico Constitution. *See* 2018-NMSC-031, ¶¶ 22, 39. In light of these three considerations, Defendant has a narrow path to walk.

**{30}** Because the Fourth Amendment does not protect the right that Defendant asserts, we examine Article II, Section 10. Defendant does not appear to argue that Article II, Section 10 should be read more expansively than the Fourth Amendment because the federal analysis is flawed or that there are structural differences between state and federal government. Instead, we understand Defendant to argue that New Mexico has distinct state characteristics in that (1) Article II, Section 10 provides a substantive right to the exclusion of illegally obtained evidence as recognized in *State v. Gutierrez*, 1993-NMSC-062; (2) *Gutierrez* states "that the New Mexico constitutional prohibition against unreasonable searches and seizures requires that we deny the state the use of evidence obtained in violation of Article II, Section 10 *in a criminal proceeding*," *id.* ¶ 45 (emphasis added); and (3) a preliminary hearing is a criminal proceeding. Amicus Curiae substantially agrees with this argument and adds that failure to exclude illegally obtained evidence at the preliminary hearing stage would "[c]arv[e] out a procedural 'free fire zone' where law enforcement's violations of the constitution are ignored."

**{31}** We agree with Defendant and Amicus that there is a salient difference between the exclusionary rule in New Mexico and its federal counterpart, in that we have recognized the exclusionary rule as part of the Article II, Section 10 right to be free from unreasonable search and seizure. *Compare Gutierrez*, 1993-NMSC-062, ¶ 50 ("The constitutional right to be free from unreasonable search and seizure includes the exclusionary rule." (emphasis omitted)), *and id.* ¶ 53 ("The approach we adopt today focuses not on deterrence or judicial integrity, nor do we propose a judicial remedy; instead, our focus is to effectuate in the pending case the constitutional right of the accused to be free from unreasonable search and seizure."), *with United States v. Calandra*, 414 U.S. 338, 348 (1974) (holding that "the [federal exclusionary] rule is a

judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved"). We do not retreat from our holding in *Gutierrez* in this case.

**{32}** However, the strength of the personal right to the exclusionary rule in New Mexico does not mandate the timing for a suppression motion. The statement in *Gutierrez* that we must deny the state the use of illegally obtained evidence "in a criminal proceeding," must be understood in the larger context of that case. 1993-NMSC-062, ¶ 45. *Gutierrez* arose from the district court's suppression of evidence after a suppression hearing. *Id.* ¶ 7. No suppression issue was raised in that case at an earlier stage than the suppression hearing, and therefore *Gutierrez* cannot be read to require suppression at an earlier stage. *See Dominguez v. State*, 2015-NMSC-014, ¶ 16, 348 P.3d 183 ("[C]ases are not authority for propositions not considered." (internal quotation marks and citation omitted)). Moreover, we read *Gutierrez*'s requirement for exclusion "in a criminal proceeding" to refer more generally to the entire criminal case rather than each separate pretrial hearing. We expressly stated that "[d]enying the government the fruits of unconstitutional conduct *at trial* best effectuates the constitutional proscription of unreasonable searches and seizures by preserving the rights of the accused to the same extent as if the government's officers had stayed within the law." *Gutierrez*, 1993-NMSC-062, ¶ 55 (emphasis added). From that statement, we infer that *Gutierrez* contemplated exclusion of illegally obtained evidence at the guilt determination stage.[3] *See also, e.g., id.* ¶ 51 (noting that, in another case, it was constitutional error to admit illegally obtained evidence "upon the trial" of the defendant (quoting *Weeks v. United States*, 232 U.S. 383, 398 (1914))). Therefore, Defendant's reliance on *Gutierrez* is unavailing. Because Defendant does not point to any other distinctive state characteristics, we are not persuaded that Article II, Section 10 supports the right to exclude illegally obtained evidence at a preliminary hearing

## D.    Response to the Dissent

**{33}** The dissent contends that the ruling established today by the majority "ignores a judge's duty to protect a defendant's constitutional rights." *Dissent* ¶ 67; *see also dissent* ¶ 42 (stating that this Court "fails to acknowledge the fundamental importance of protecting the constitutional rights of the accused"). It does nothing of the sort. The majority opinion simply reserves any question regarding the legality by which the evidence was obtained for a later date than the preliminary hearing when the matter can be carefully considered.

**{34}** Defendants have an existing pretrial mechanism to vindicate their right to be free from unconstitutional searches and seizures: a motion to suppress. *See* Rule 5-212.

---

3We leave for another day the question raised by Defendant of whether the exclusionary rule applies at a preliminary hearing to statements obtained in violation of the Fifth Amendment and/or Article II, Section 15 of the New Mexico Constitution protections against self-incrimination. *See, e.g., Vogt v. City of Hays*, 844 F.3d 1235, 1241-42 (10th Cir. 2017) (holding that statements obtained in violation of the Fifth Amendment must be suppressed at preliminary hearing). This case only requires that we determine whether evidence may be suppressed at a preliminary hearing when the evidence was obtained through an unreasonable search and seizure in violation of Article II, Section 10.

Today's ruling does nothing to diminish this remedy or change the majority's commitment to protecting the right to be free from unconstitutional searches and seizures. Although one might not know it from the dissent, the sky has not fallen. A preliminary hearing bindover based on illegally obtained evidence, unlike a bindover based on other inadmissible evidence (e.g., hearsay), will not force the defendant to trial on incompetent evidence. 4 LaFave, supra, § 14.4(b).

{35}    Our federal courts follow the approach established by the majority in this opinion. Fed. R. Crim. P. 5.1 (stating that the defendant may cross-examine adverse witnesses and may introduce evidence but may not object to evidence on the ground that it was unlawfully acquired); *see also* Fed R. Crim. P. 5.1 advisory committee notes ("[S]ubdivision (a) [of Fed R. Crim. P. Rule 5.1] provides that the preliminary examination is not the proper place to raise the issue of illegally obtained evidence. This is current law." (citing *Giordenello v. United States*, 357 U.S. 480, 484 (1958))). And according to a leading commentator, "[t]he *majority position* refus[es] to allow exclusionary rule objections [at preliminary hearings]." 4 LaFave, *supra*, § 14.4(b), at 392 (emphasis added). Thus, the majority of judges across the country, including all of our federal judges, conduct preliminary hearings without addressing the exclusion of illegally obtained evidence. The dissent provides no substantive support for its position that the ruling announced today, which conforms with the federal practice and the majority of jurisdictions, would result in the judiciary ignoring their duty as judges, undermine the very fabric of our legal principles, and compromise the integrity of our justice system. *See dissent* ¶¶ 45, 67 ("Failing to consider the constitutionality of evidence undermines the very fabric of our legal principles and compromises the integrity of our justice system."). Instead, they rely on broad rhetoric including heavy reliance on *United States v. MounDay*, 208 F. 186 (D. Kan. 1913), a district of Kansas case dating back to 1913.

{36}    The essential question answered is whether a defendant's clear interest in being unburdened from a nonviable prosecution as early as possible, which we recognize outweighs the jurisprudential problems involved in determining suppression issues at a preliminary hearing. *See maj. op.* ¶¶ 20-22 (noting that preliminary hearings must be held and adjudicated within ten days, discovery is limited to the evidence in the State's possession, and that the preliminary hearing rule does not provide for briefing). The instant case pointedly illustrates why a preliminary hearing is an inappropriate stage of litigation to consider exclusionary rule objections.

{37}    In the preliminary hearing in this case, no law was cited to the district court to help determine whether the opiates found in Defendant's possession were fruit of the poisonous tree and therefore subject to suppression. The dissent quotes the district court's conclusion that "'[t]here's no reasonable suspicion to even stop [Defendant] . . . so [the case] won't be bound over'" and then states approvingly that "the district court . . . took into account the constitutionality of the evidence's procurement, weighed the evidence, and then made a probable cause determination." *Dissent* ¶ 44. That said, based on the sparse record developed soon after a filing of the information setting forth the charges, the dissent is ready to rule.

**{38}**    However, one unaddressed issue in the district court was whether the attenuation exception to the exclusionary rule applies, given that the officer discovered a valid warrant after the stop. In *Utah v. Strieff*, the United States Supreme Court established that the attenuation exception can apply when, after initiating an unconstitutional investigatory stop, an officer discovers a valid arrest warrant and then seizes incriminating evidence during the search incident to the arrest. 579 U.S. 232, 235 (2016).[4] Our Court of Appeals has applied the *Strieff* attenuation framework three times, two of which are formal opinions.[5] Yet, none of these cases were brought to the attention of the district court during the preliminary hearing. Nor was the attenuation exception to the exclusionary rule brought to the court's attention. In fact, there was no mention of this issue at the preliminary hearing.

**{39}**    District court judges need the benefit of briefing, time, and a sufficient record to decide complex suppression issues. Asking trial courts to adjudicate these issues based on intuition and generalities, as the dissent does, rather than law is inappropriate. In the long run, that does not do justice to defendants, the state, the judiciary, or, ultimately, the people of New Mexico. The better path is for these issues to receive a full, fair, and focused suppression hearing, with the benefit of briefing, sufficient time, and a fully developed record.

## III.    CONCLUSION

**{40}**    We hold that a district court judge has no authority at a Rule 5-302 preliminary examination to decide whether evidence was obtained from an unconstitutional search or seizure, and we remand for proceedings consistent with this opinion.

**{41}    IT IS SO ORDERED.**

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**JULIE J. VARGAS, Justice**

**BRETT R. LOVELESS, Judge**
**Sitting by designation**

---

4The skeletal facts of *Strieff* are very much like the facts in this case. In *Strieff*, an officer stopped the defendant without reasonable suspicion. 579 U.S. at 235-36, 239. During the illegal investigatory stop, the officer discovered that the suspect had a valid arrest warrant. *Id.* at 235. The officer then discovered illegal drugs and drug paraphernalia when conducting a search incident to arrest. *Id.* at 235-36. The defendant was charged with unlawful possession of the drug-related materials. *Id.* at 236.
5*State v. Ramey*, 2020-NMCA-041, ¶¶ 1, 6, 19-28, 473 P.3d 13 (engaging in the attenuation analysis and citing *Strieff,* where the defendant was assumed to be seized without reasonable suspicion, followed by the discovery of a valid arrest warrant and a search incident to arrest leading to the seizure of incriminating evidence); *State v. Edwards*, 2019-NMCA-070, ¶¶ 1, 4, 6-12, 452 P.3d 413 (similar); *State v. Baca*, A-1-CA-36722, mem. op. ¶¶ 3-8 (N.M. Ct. App. Jan. 7, 2020) (nonprecedential) (similar).

**C. SHANNON BACON, Chief Justice, dissenting**

**MICHAEL E. VIGIL, Justice, dissenting**

**VIGIL, Justice (dissenting).**

## I. INTRODUCTION

**{42}** According to the majority, a district court judge conducting a preliminary examination[6] "'should receive the evidence and give it such weight as his judgment and experience counsel,'" *maj. op.* ¶ 23 (quoting *United States v. Matlock*, 415 U.S. 164, 175 (1974)); however, the judge "has no authority to decide whether evidence was obtained from an unconstitutional search or seizure," *maj. op.* ¶ 1. This contradictory conclusion clashes with basic principles enshrined in the New Mexico Constitution and fails to acknowledge the fundamental importance of protecting the constitutional rights of the accused. We cannot agree to such a conclusion.

**{43}** The majority characterizes a district court judge's consideration of the constitutionality of evidence in a preliminary examination as a "suppression issue." *Maj. op.* ¶ 32. Granted, the evidence is suppressed for the purposes of the preliminary examination, but this does not necessarily mean the evidence is suppressed for the trial itself. A preliminary examination and a trial are distinct proceedings, each with its own set of rules and considerations. *See State v. Garcia*, 1968-NMSC-119, ¶ 5, 79 N.M. 367, 443 P.2d 860. Moreover, the issue of whether a suppression ruling in a preliminary examination has preclusive effect on the subsequent trial and other procedural issues are not before us. We are confident that our Rules of Criminal Procedure for the State Courts Committee could amend Rule 5-302 NMRA to address any procedural concerns that may arise in the future.

**{44}** The issue at hand is one of authority and the proper weighing of evidence. Here, the district court judge stated that she would not bind the case over "for a number of reasons." The district court judge explained,

> There was no reason to detain [Defendant] to begin with, I mean that's what I'm finding. There's no reason. [Defendant] wasn't doing illegal activity, he complied with the orders. [The officer] recognized him I understand that, but he wasn't doing anything. There's no reasonable suspicion to even stop him. [The officer] called him out by name; [Defendant] complied. He wasn't doing any criminal activity at that time so [the case] won't be bound over.

Thus, the district court, in its wisdom, took into account the constitutionality of the evidence's procurement, weighed the evidence, and then made a probable cause

---

[6]For consistency with the language in our Constitution (N.M. Const. art. II, § 14; art. VI, § 21) and Rule 5-302 NMRA, this dissent uses the term *preliminary examination* to refer to the proceeding at issue in this case. We note that the majority uses the term *preliminary hearing* to refer to the same proceeding.

determination. Such actions are well within the purview of a district court judge's authority and duty.

**{45}** It is incumbent upon judges to safeguard constitutional rights and ensure that justice is served. *See State v. Gutierrez*, 1993-NMSC-062, ¶ 55, 116 N.M. 431, 863 P.2d 1052 ("The very backbone of [the judiciary's] role in a tripartite system of government is to give vitality to the organic laws of this state by construing constitutional guarantees in the context of the exigencies and the needs of everyday life."). Failing to consider the constitutionality of evidence undermines the very fabric of our legal principles and compromises the integrity of our justice system. *See id.* ¶¶ 50-56 (explaining that the exclusionary rule is not based on judicial integrity or deterrence, yet it undeniably promotes these crucial state policies).

**{46}** In light of these concerns, we respectfully dissent.

## II.     DISCUSSION

**{47}** A district court, entrusted with the solemn task of dispensing justice, has the authority to assess the constitutionality of evidence during a preliminary examination. The reasoning behind our assertion is firmly rooted in the authority provided to district courts under the New Mexico Constitution and our Rules of Criminal Procedure for District Courts, a judge's duty to protect constitutional rights, the disparities between a preliminary examination and a grand jury proceeding, and this Court's core interpretation of Article II, Section 10 of the New Mexico Constitution.

### A.     A Judge's Authority

**{48}** Under the New Mexico Constitution, district courts are explicitly granted the power to hold preliminary examinations. The New Mexico Constitution unequivocally states that the judicial power of the state is vested in various courts, including district courts, N.M. Const. art. VI, § 1, which possess "original jurisdiction in all matters and causes not excepted in [the New Mexico Constitution], and such jurisdiction of special cases and proceedings as provided by law." N.M. Const. art. VI, § 13. One such proceeding is a preliminary examination. *See* N.M. Const. art. VI, § 21 ("District judges and other judges or magistrates designated by law may hold preliminary examinations in criminal cases."); *see also* N.M. Const. art. II, § 14 ("No person shall be so held on information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination."). Further, with regard to a district court's original jurisdiction, "the district court has the authority to consider constitutional claims in the first instance." *Maso v. N.M. Tax'n & Revenue Dep't, Motor Vehicle Div.*, 2004-NMCA-025, ¶ 14, 135 N.M. 152, 85 P.3d 276; *see Marchman v. NCNB Texas Nat'l Bank*, 1995-NMSC-041, ¶ 27, 120 N.M. 74, 898 P.2d 709 ("The district court thus is a court of general jurisdiction, because it has jurisdiction over all matters not expressly consigned to other courts.").

**{49}** In light of these constitutional provisions, it becomes abundantly clear that district courts possess the authority to hold preliminary examinations and consider

constitutional issues. This authority is not only granted by the New Mexico Constitution, but it is also recognized as an essential aspect of our judicial system. *See State ex rel. Whitehead v. Vescovi-Dial*, 1997-NMCA-126, ¶ 6, 124 N.M. 375, 950 P.2d 818 ("[A] preliminary examination operates as a screening device to prevent hasty and unwise prosecutions and to save an innocent accused from the humiliation and anxiety of a public prosecution.").

**{50}**　Additionally, our Rules of Criminal Procedure for the District Courts clarify that district courts have the responsibility and authority to adjudicate evidentiary issues during preliminary examinations. *See* Rule 5-302(D) (requiring the court to make a probable cause determination); *see also* Rule 5-302(B)(5) (providing that the Rules of Evidence apply in a preliminary examination). This includes weighing the evidence presented "and assess[ing] the existence of probable cause from a developed factual record." *State v. Muraida*, 2014-NMCA-060, ¶ 23, 326 P.3d 1113; *see State v. Archuleta*, 1970-NMCA-131, ¶ 25, 82 N.M. 378, 482 P.2d 242 (stating that where the "defendant was charged by an information, he ha[s] a constitutional right to a preliminary examination"); *see also* UJI 14-8001 NMRA (instructing grand jurors that a decision on probable cause must be based "solely upon the evidence received" which may be determined to be "true or false" and given "whatever weight . . . it deserves"). Thus, district court judges are empowered by our own rules to conduct preliminary examinations, adjudicate evidentiary issues, weigh the evidence presented, and make probable cause determinations. *See Muraida*, 2014-NMCA-060, ¶ 23. And, in exercising its original jurisdiction, district courts have "the authority to consider constitutional claims in the first instance." *Maso*, 2004-NMCA-025, ¶ 14.

**{51}**　While the majority acknowledges the existence of this authority, *maj. op.* ¶¶ 20, 23, it still questions whether district courts may consider the constitutionality of the evidence in making a probable cause determination. The answer is a resounding yes. It is the duty of every judge, including those presiding over preliminary examinations, to ensure that the constitutional rights of a defendant are upheld. They are empowered and equipped to do so.

**B.　A Judge's Duty**

**{52}**　On numerous occasions, this Court has emphasized that a judge must "protect the constitutional rights of [a d]efendant and the integrity of the court." *State v. Hildreth*, 2022-NMSC-012, ¶ 38, 506 P.3d 354; *see State v. Grogan*, 2007-NMSC-039, ¶ 10, 142 N.M. 107, 163 P.3d 494 (providing that "in cases of obvious ineffective assistance of counsel, the trial judge has the duty to maintain the integrity of the court, and thus inquire into the representation"). This duty to protect the constitutional rights of a defendant is no less applicable in the context of a preliminary examination. *See State v. Vaughn*, 1964-NMSC-158, ¶ 9, 74 N.M. 365, 393 P.2d 711 ("When violation of a constitutional right in the proceedings before the magistrate is brought to the attention of the trial court and found to exist, the accused's right *and the court's duty* is to abate the information until there has been a proper preliminary examination." (emphasis added)). Consequently, it is not only a prerogative but also an obligation of a judge to consider the constitutionality of the evidence presented in a preliminary examination.

**{53}**     As guardians of justice, judges must carefully evaluate the evidence presented and assess its legality. If judges—in their experience and judgment—believe that evidence was obtained in an unconstitutional manner, they have the authority and duty to give that evidence little, if any, weight in making a probable cause determination. Such a duty is consistent with the constitutional requirement that "every person elected or appointed to any office shall . . . subscribe to an oath or affirmation that he will support the constitution of the United States and the constitution and laws of this state, and that he will faithfully and impartially discharge the duties of his office to the best of his ability." N.M. Const. art. XX, § 1.

**{54}**     Moreover, when we examine the substantial differences between a preliminary examination and a grand jury proceeding, the importance of weighing the constitutionality of the evidence becomes ever more apparent. This is because preliminary examinations provide crucial procedural safeguards and afford defendants a range of rights that are not present in a grand jury setting.

## C.      Preliminary Examinations and Grand Jury Proceedings

**{55}**     Before detailing the disparities between a preliminary examination and a grand jury proceeding, some context is necessary. To charge a defendant with a felony, the state may either obtain an indictment from a grand jury or file a criminal information. *See* N.M. Const. art. II, § 14. "If charged by criminal information, a defendant has a right to a preliminary examination. No such right exists if the defendant is indicted by a grand jury." *State v. Burk*, 1971-NMCA-018, ¶ 2, 82 N.M. 466, 483 P.2d 940. "The choice to proceed by information or indictment is that of the [s]tate." *Id.* ¶ 6. "The state may choose to seek a grand jury indictment for the same offense following an unfavorable preliminary examination." *State v. White*, 2010-NMCA-043, ¶ 12, 148 N.M. 214, 232 P.3d 450.

**{56}**     Our Court of Appeals correctly stated that "[t]he primary purpose of the preliminary examination is to provide an independent evaluation of whether the state has met its burden of demonstrating probable cause." *Whitehead*, 1997-NMCA-126, ¶ 5. Importantly, the New Mexico Constitution "provides . . . for a preliminary examination as a right which is personal to the accused, for his or her benefit, and accordingly one which is waivable in its entirety by the defendant and not enforceable independently by the prosecution." *Id.* ¶ 12; *see* N.M. Const. art. II, § 14. This personal right of the accused to a preliminary examination is included in the Bill of Rights of the New Mexico Constitution, "stand[ing] shoulder to shoulder with the most basic guarantees of individual liberty *against* the power of the state, such as the right of self-government ([N.M. Const.] art. II, § 3), the right to life, liberty and property ([N.M. Const.] art. II, § 4), the right of habeas corpus ([N.M. Const.] art. II, § 7), the right to bear arms ([N.M. Const.] art. II, § 6), the freedom of elections ([N.M. Const.] art. II, § 8), . . . the freedoms of speech, press, and religion ([N.M. Const.] art. II, §§ 11, 17)," *Whitehead*, 1997-NMCA-126, ¶ 12, and notably, the right to be free from an unreasonable search and seizure (N.M. Const. art. II, § 10). These are all "guarantees of liberty to be invoked by the accused in a criminal prosecution, as the accused sees fit." *Whitehead*, 1997-

NMCA-126, ¶ 12. With this important context, we now turn to the many differences between a preliminary examination and a grand jury proceeding.

**{57}**   A preliminary examination is a critical stage of the criminal proceedings against an accused, *Vaugh*, 1964-NMSC-158, ¶ 3, where "the state is required to establish, to the satisfaction of the examining judge, two components: (1) that a crime has been committed; and (2) probable cause exists to believe that the person charged committed it," *White*, 2010-NMCA-043, ¶ 11. Preliminary examinations are adversarial in nature and open to the public. *Herrera v. Sanchez*, 2014-NMSC-018, ¶ 16, 328 P.3d 1176. The defendant plays an active role and is permitted rights necessary to test the state's case. *Id.* These include the right to be present with counsel throughout the proceeding, to cross-examine the State's witnesses, to call and subpoena witnesses on the defendant's own behalf, and to access any evidence in the prosecution's possession that is material in the preparation of the defense. Rule 5-302(B)(1)-(4). Also, the New Mexico Rules of Evidence apply. Rule 5-302(B)(5). Notably, the committee commentary for Rule 5-302 stresses that these procedures and rights afforded to a defendant are "not intended to be a comprehensive list of the defendant's rights."

**{58}**   Unlike the public and adversarial nature of preliminary examinations, grand jury proceedings are secretive and one-sided. *Herrera*, 2014-NMSC-018, ¶ 16. On the one hand, the prosecutor controls the grand jury process. *Id.* The prosecutor questions witnesses, presents evidence, and instructs the grand jury on the law and its application. *Id.* ¶¶ 15-16. On the other hand, the target of the grand jury proceeding has limited rights: the target can choose to testify, *see* NMSA 1978, § 31-6-11(C)(3)-(5) (2003), request the prosecutor inform the grand jury of exculpatory evidence and possible defenses, *see* § 31-6-11(B), and consult with counsel in a manner that is not audible to the grand jurors, *see* NMSA 1978, § 31-6-4(D) (2003). Other than this silent consultation, the target's attorney may not participate in the proceedings. *Id.* Moreover, "[t]he grand jury sits without direct supervision from the grand jury judge," *Herrera*, 2014-NMSC-018, ¶ 15, and the rules of evidence do not apply, Section 31-6-11(A).

**{59}**   This stark contrast between the rights afforded, the nature of the proceedings, the application of the rules of evidence, and a judge's involvement, counsels in favor of adopting a rule that district court judges have authority to take into account the constitutionality of the evidence's procurement during a preliminary examination. These disparities, in concert with the authority granted to district court judges under the New Mexico Constitution and their duty to protect a defendant's constitutional rights, strongly support the adoption of such a rule. Furthermore, the adoption of this rule seems inevitable given this Court's core interpretation of Article II, Section 10.

## D.    Article II, Section 10

**{60}**   We now turn to this Court's precedent, particularly *Gutierrez*, 1993-NMSC-062, and its interpretation of Article II, Section 10. As will soon be clear, the majority's conclusion is in direct opposition to the *Gutierrez* Court's ruling, rationale, and understanding of the exclusionary rule.

**{61}** In *Gutierrez*, this Court analyzed "whether the New Mexico Constitution contemplates a good-faith exception to the exclusionary rule." 1993-NMSC-062, ¶ 15. The *Gutierrez* Court concluded that the federal good-faith exception was incompatible with the New Mexico Constitution. *Id.* ¶ 45. In arriving at this conclusion, the Court thoroughly examined the history and application of the federal exclusionary rule, New Mexico search and seizure jurisprudence, the framers' intent as to the scope, meaning, and effect of Article II, Section 10, and search and seizure law as it was in 1911. *Gutierrez*, 1993-NMSC-062, ¶¶ 16-43. In the end, the *Gutierrez* Court held that at its core, the "constitutional prohibition against unreasonable searches and seizures requires that we deny the state the use of evidence obtained in violation of Article II, Section 10 in a criminal proceeding." *Gutierrez*, 1993-NMSC-062, ¶ 45.

**{62}** The *Gutierrez* Court, *id.* ¶ 46, observed that "[a]s a starting point, Article II, Section 10 expresses the fundamental notion that every person in this state is entitled to be free from unwarranted governmental intrusions." The Court explained that "[t]his broad right . . . implicit in Article II, Section 10, considered in the context of criminal prosecution brought to bear after violation of that right," was paramount to its rejection of the federal good-faith exception. 1993-NMSC-062, ¶ 46. The *Gutierrez* Court, *id.* ¶¶ 48-50, then utilized two cases to illustrate "the essential core" of its interpretation of Article II, Section 10—*United States v. MounDay*, 208 F. 186 (D. Kan. 1913) and *United States v. Wong*, 94 F. 832 (D. Vt. 1899). *MounDay* is particularly illuminating to the issue at hand.

**{63}** In *MounDay*, the defendants were arrested and private property was seized pursuant to an unconstitutional search. 208 F. at 186-87. "Thereafter [the] defendants were bound over to await the action of the grand jury." *Id.* at 187. After the arrest, but prior to the grand jury indictment, the defendants in *MounDay* filed an application to the district court requesting that the unconstitutionally obtained evidence be returned. *Id.* The district attorney filed a cross-application requesting authorization to present the illegally obtained evidence to the grand jury to secure an indictment. *Id.* The question before the *MounDay* Court was whether the state in a criminal prosecution may use illegally obtained evidence for the purpose of securing an indictment when "the question is presented and inquired of . . . in advance of investigation by the grand jury, or indictment returned[.]" *Id.* at 188. The *MounDay* Court concluded that the evidence could not be used either "before the grand jury or at the trial," and it granted the defendants' application and ordered the property to be returned. *Id.* at 190. The *MounDay* Court stated its rationale:

> How, therefore, can the rights of defendants "to be secure in their persons, houses, papers and effects" be asserted by and granted to them, as the Constitution guarantees, in this court? Can it be done by placing in the hands of the government officials charged by law with the prosecution of defendants as offenders against its laws the fruits of this unlawful invasion of constitutional rights of defendants by the agents of the government, and this in the very teeth of that provision of article 5 above quoted, which declares "no person . . . shall be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without

due process of law"? As yet, defendants stand charged with the commission of no criminal offense in this court. Even if so charged, this court must and will presume their innocence until the contrary is proven beyond reasonable doubt. In order to secure such proof and assist the government in overcoming the presumption of innocence which attends upon defendants and all other citizens until lawful conviction had, shall this court wink at the unlawful manner in which the government secured the proofs now desired to be used, and condone the wrong done defendants by the ruthless invasion of their constitutional rights, and become a party to the wrongful act by permitting the use of the fruits of such act? Such is not my conception of the sanctity of rights expressly guaranteed by the Constitution to a citizen.

*MounDay*, 208 F. at 189.

**{64}** The *Gutierrez* Court quoted with approval the language above and expressed that it "suggest[s] the essential core of [the Court's] interpretation of Article II, Section 10." 1993-NMSC-062, ¶¶ 48, 50. The Court elaborated: "We ask, much as the court in *MounDay* asked, how this Court can effectuate the constitutional right to be free from unreasonable search and seizure. The answer to us is clear: to deny the government the use of evidence obtained pursuant to an unlawful search." *Id.* ¶ 50.

**{65}** *Gutierrez* teaches that at its core, Article II, Section 10 conveys a "broad right" to every person in this state "to be free from unwarranted governmental intrusions." *Id.* ¶ 46. It is not a right that is incumbent on a criminal prosecution or a phase where guilt or innocence is definitively determined. It is "a passive right" that all carry with them; it "lies in waiting, to curb the state's zeal in execution of the criminal laws." *Id.* ¶ 54. As succinctly stated by Chief Justice Bacon during oral argument, "We are talking about a constitutional right that we carry on our backs everywhere we go. Unlike many constitutional rights which are triggered once action is taken, this is something that we are imbued with in our everyday lives." The only way for this Court, or a district court for that matter, to "effectuate the constitutional right to be free from unreasonable search and seizure . . . is . . . to deny the government the use of evidence obtained pursuant to an unlawful search." *Id.* ¶ 50. This includes the use of illegally obtained evidence to get a probable cause determination in a preliminary examination.[7]

---

[7]We note that this conclusion is consistent with this Court's holding in *State v. Martinez*, 2018-NMSC-031, ¶ 1, 420 P.3d 568, that "a court may not overturn an otherwise lawful grand jury indictment because of trial inadmissibility or improprieties in the procurement of evidence that was considered by the grand jury." The distinction between *Martinez* and *MounDay* is that, in the latter case, the question of the legality of evidence was presented to a judge *prior* to obtaining a grand jury indictment. Thus, while a district court does not have the authority to overturn an otherwise lawful grand jury indictment which is based on illegal evidence, it does have the authority and duty to consider constitutional claims presented prior to an indictment. *See MounDay*, 208 F. at 188 ("Where it is conceded evidential matters material to the inquiry made have been seized, as in this case, may or should the court, *on being inquired of*, permit such use of such matters as is desired by the representative of the government, as is shown by his application in this case?" (emphasis added )).

## E. The Majority Opinion

**{66}** The majority acknowledges that "[t]he structure of a preliminary [examination] is indeed very different from that of a grand jury proceeding," *maj. op.* ¶ 12; however, the majority does not wish "to add further imbalance between these two related alternatives for probable cause findings," *maj. op.* ¶ 16, by ruling that a district court judge has the authority to consider the constitutionality of evidence in a preliminary examination. This procedural concern is unconvincing for several reasons.

**{67}** First, the differences between a preliminary examination and a grand jury proceeding already incentivize the state to proceed by grand jury indictment. *See Burk*, 1971-NMCA-018, ¶ 5. Such is the state's prerogative. *Id.* ¶ 2. Second, the majority's conclusion ignores a judge's duty to protect a defendant's constitutional rights. *See Gutierrez*, 1993-NMSC-062, ¶ 55. Third, to "wink at the unlawful manner in which the government secured the proofs now desired to be used, and condone the wrong done [to Defendant] by the ruthless invasion of [his] constitutional rights, and become a party to the wrongful act by permitting the use of the fruits of such act," *MounDay*, 208 F. at 189, runs counter to this Court's holding in *Gutierrez*, 1993-NMSC-062.

**{68}** Next, the majority claims that if we were to allow district court judges to consider the legality of evidence in a preliminary examination, the judge's determinations would then be subject to appeal, causing significant delays. *Maj op.* ¶ 21. To this point, the majority notes that Defendant's appeal relates to a preliminary examination which occurred more than three years ago. *Maj op.* ¶ 21. However, this procedural argument suffers the same infirmities described above. What is more, the State in this case did not appeal from an order suppressing evidence, *see* NMSA 1978, § 39-3-3(B)(2) (1972), instead the State appealed pursuant to Section 39-3-3(B)(1), which is "a decision, judgment or order dismissing a complaint, indictment or information as to any one or more counts." Thus, this avenue of appeal is undisturbed by any rule this Court articulates today. Also, we again question characterizing the district court judge's consideration on the constitutionality of evidence as a suppression of evidence. *See maj. op.* ¶ 32. There was no order suppressing evidence. Because of this, we view the district court's actions as making a probable cause determination based on the evidence presented and taking into consideration the constitutionality of the evidence's procurement in making its determination. As reflected above, such actions are within a district judge's authority and duty.

**{69}** Aside from these procedural concerns, the majority makes three substantive points in support of its position: (1) *State v. Lopez*, 2013-NMSC-047, 314 P.3d 236, "shows that not all constitutional rights are available at a preliminary [examination]," (2) "*Martinez* shows that there is no broad right to suppress evidence at the probable cause stage under the New Mexico Constitution," and (3) "*Gutierrez* cannot be read to require suppression" of evidence at a stage earlier than that of a suppression hearing. *Maj. op.* ¶¶ 29-32. We disagree with the conclusions drawn from these cases. We address each point in turn.

**{70}**   In *Lopez*, this Court held "that the right of confrontation in Article II, Section 14 of the New Mexico Constitution is a trial right that does not apply to probable cause determinations in preliminary examinations." 2013-NMSC-047, ¶ 26. This makes sense. The right of confrontation prohibits the "admission of testimonial statements of a witness *who did not appear at trial* unless he was unavailable to testify, and the defendant ha[s] had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004) (emphasis added). Thus, a violation of the right is *triggered* when the witness is absent from trial and the defendant was given no prior opportunity to cross-examine. *See id.* at 59 n.9 ("Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."). This is not the case for the right to be free from an unreasonable search and seizure.

**{71}**   A violation of the right to be free from an unconstitutional search and seizure is not dependent on some event at trial. The right is violated at the time of the unconstitutional search and seizure. *See Soldal v. Cook Cnty.,* 506 U.S. 56, 67 n.11 (1992) ("Fourth Amendment guarantees are triggered by governmental searches and seizures without regard to the use to which houses, papers, and effects are applied." (brackets, internal quotation marks, and citation omitted)); *see also Gutierrez*, 1993-NMSC-062, ¶ 46 ("As a starting point, we observe that Article II, Section 10 expresses the fundamental notion that every person in this state is entitled to be free from unwarranted governmental intrusions."). Surely the majority would not suggest that Article II, Section 10 protections only attach at trial in a criminal prosecution or a phase where guilt or innocence is definitively determined.

**{72}**   To the majority's second point, it is not at all clear how the majority can conclude "*Martinez* shows that there is no broad right to suppress evidence at the probable cause stage," *maj. op.* ¶ 29, and in the same breath "conclude that the grand jury analysis in *Martinez* does not control the result in this case," *maj. op.* ¶ 14. To the extent it is argued that *Martinez* has bearing on this case, we refer to the above analysis on the disparities between preliminary examinations and grand jury proceedings.

**{73}**   The majority's final point is that *Gutierrez* does not compel the exclusion of evidence obtained in violation of Article II, Section 10 before a suppression hearing. *Maj. op.* ¶ 32. It reasons that because *Gutierrez* did not involve such a scenario, its pronouncement that we must bar the state from using unlawfully seized evidence "'in a criminal proceeding,'" must be confined to the facts of that case. *Maj. op.* ¶ 32 (quoting *Gutierrez*, 1993-NMSC-062, ¶ 45). We urge the majority to follow its own counsel and appreciate the broader principle *Gutierrez* established.

**{74}**   The majority latches onto the two times the *Gutierrez* Court utilized language beneficial to its position. *See maj. op.* ¶ 32. First, when the *Gutierrez* Court used the language "at trial," and second, when the Court quoted *Weeks v. United States*, 232 U.S. 383, 398 (1914) and its use of the language "upon the trial." *Gutierrez*, 1993-NMSC-062, ¶¶ 51, 55; *see maj. op.* ¶ 32. Close examination of the context in which the quoted language was used demonstrates it does not support the majority position.

**{75}** Immediately preceding the use of the language "at trial," the *Gutierrez* Court explains that the only way "this Court can effectuate the constitutional right to be free from unreasonable search and seizure . . . is . . . to deny the government the use of evidence obtained pursuant to an unlawful search." 1993-NMSC-062, ¶ 50. Over and over again, the *Gutierrez* Court announced a broad, sweeping rule to deny the government's use of evidence obtained in violation of Article II, Section 10. This comprehensive rule is sufficient to encompass preliminary examinations. *See Gutierrez,* 1993-NMSC-062, ¶ 50. ("We ask, much as the court in *MounDay* asked, how this Court can effectuate the constitutional right to be free from unreasonable search and seizure. The answer to us is clear: to deny the government the use of evidence obtained pursuant to an unlawful search."); *id.* ¶ 45 ("We are satisfied . . . that the New Mexico constitutional prohibition against unreasonable searches and seizures requires that we deny the state the use of evidence obtained in violation of Article II, Section 10 in a criminal proceeding."); *id.* ¶ 46 ("As a starting point, we observe that Article II, Section 10 expresses the fundamental notion that every person in this state is entitled to be free from unwarranted governmental intrusions."); *id.* ¶ 53 ("If, after consideration of the substantive constitutional issue, the court decides that the state has transgressed the constitutional rights of a person accused of a crime, we will not sanction that conduct by turning the other cheek."); *id.* ¶ 54 ("Once violation of Article II, Section 10 has been established, we do no more than return the parties to where they stood before the right was violated."). Additionally, by stating that *MounDay*—a case where the government was denied the use of illegally obtained evidence before any suppression hearing, 208 F. at 189—"suggest[s] the essential core of our interpretation of Article II, Section 10," the *Gutierrez* Court made clear that we are to deny the government the use of evidence obtained pursuant to an unlawful search at any stage in a criminal proceeding. 1993-NMSC-062, ¶ 50.

**{76}** As for the quoted language in *Weeks*, the *Gutierrez* Court emphasized that the constitutional rights of the defendant in that case were violated not upon the use of illegally obtained evidence at trial, but when the court refused to return the defendant's letters prior to trial:

> We therefore reach the conclusion that . . . there was involved in the order refusing the application [for return of the seized property] *a denial of the constitutional rights of the accused*, and that the court should have restored these letters to the accused. In holding them and permitting their use upon the trial, we think prejudicial error was committed.

*Gutierrez*, 1993-NMSC-062, ¶ 51 (alterations in original) (internal quotation marks omitted) (quoting *Weeks*, 232 U.S. at 398). The *Gutierrez* Court emphasized this language because it is wedded to the theory that the only way to vindicate the constitutional right to be free from unreasonable search and seizure is to deny the government the use of evidence obtained pursuant to an unlawful search. *See id.* ¶ 50 ("This, we believe, is the rationale at work in *Weeks*."). The majority's reliance on the "upon the trial" language is thus misguided.

## III.    CONCLUSION

**{77}**    Our position is that district court judges have both the power and the obligation to evaluate the constitutionality of evidence at a preliminary examination. This follows from the authority granted to district courts by the New Mexico Constitution and our Rules of Criminal Procedure, a judge's responsibility to safeguard the constitutional rights of defendants, the differences between a preliminary examination and a grand jury proceeding, and this Court's fundamental interpretation of Article II, Section 10 of the New Mexico Constitution. The majority does not share this view, so we respectfully dissent.

**{78}    IT IS SO ORDERED.**

**MICHAEL E. VIGIL, Justice**

**I CONCUR:**

**C. SHANNON BACON, Chief Justice**